**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-4172**

UNITED STATES OF AMERICA,

       Plaintiff – Appellee,

v.

OMAR KAREEM BANKS,

       Defendant – Appellant.

**No. 20-4173**

UNITED STATES OF AMERICA,

       Plaintiff – Appellee,

v.

OMAR KAREEM BANKS,

       Defendant – Appellant.

Appeals from the United States District Court for the Western District of Virginia, at Big Stone Gap. James P. Jones, Senior District Judge. (2:19-cr-00006-JPJ-PMS-2; 2:19-cr-00010-JPJ-PMS-2)

Argued: December 9, 2021              Decided: March 18, 2022

Before GREGORY, Chief Judge, NIEMEYER and QUATTLEBAUM, Circuit Judges.

Affirmed by published opinion. Judge Quattlebaum wrote the opinion, in which Chief Judge Gregory and Judge Niemeyer joined.

**ARGUED:** Paul Graham Beers, GLENN, FELDMAN, DARBY & GOODLATTE, Roanoke, Virginia, for Appellant. Jonathan Patrick Jones, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee. **ON BRIEF:** Daniel P. Bubar, Acting United States Attorney, Anthony P. Giorno, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

QUATTLEBAUM, Circuit Judge:

Omar Kareem Banks, who was indicted for possession with intent to distribute 50 or more grams of methamphetamine, argues that the district court's jury instructions at his trial constructively amended his indictment by permitting the jury to convict on a basis not included in the indictment. Although he did not object at trial, after being convicted of possession with the intent to distribute, Banks now claims the district court's instructions violated the Grand Jury Clause of the Fifth Amendment. We previously held in *United States v. Floresca*, 38 F.3d 706 (4th Cir. 1994), that constructive amendments must always be reversed without reference to the four factors of plain error review. But *Floresca*'s reasoning and holding are inconsistent with subsequent Supreme Court opinions and thus no longer tenable. Instead, that Supreme Court authority requires plain error review. And under that review, Banks fails to establish that his conviction for possession with intent to distribute would seriously affect the fairness, integrity and public reputation of judicial proceedings.

Banks also raises several other challenges to his conviction. He argues that the district court's jury instructions made his indictment duplicitous because they created the possibility that the jury could have convicted him for either possession with intent to distribute or distribution. He argues a separate count of his indictment, violation of 18 U.S.C. § 924(c), was also duplicitous because it charged two separate offenses: (1) "use and carry" of a firearm during and in relation to a drug trafficking crime and (2) "possession" of a firearm in furtherance of a drug trafficking crime. Finally, he argues that the district court improperly admitted Facebook messages, over his objection, referencing

3

drug activity without a proper foundation that the messages related to him. We reject these other arguments as well.

Accordingly, we affirm Banks' conviction.

I.

On the morning of February 7, 2019, Omar Banks and David Ringley met with a group of methamphetamine users at a Super 8 motel in Coeburn, Virginia. The group consisted of Brandy Mullins, Steven "Spider" Stevens, Carmen Long and Christy Salyers. They had rented two rooms, rooms 231 and 232, which were directly across from one another on the second floor. The group had been smoking methamphetamine all night. But by the time Banks and Ringley arrived, they had run out.

Banks and Ringley met Mullins, Long and Salyers in the motel's parking lot. Banks removed a red duffel bag from the car and carried it into room 232. After that, the group began using methamphetamine again. About an hour and a half later, Ringley overdosed.

Spider called 911, claiming Ringley had suffered an allergic reaction. Spider then instructed the group to move everything drug-related into the other room. In turn, everyone left room 232—where Ringley had overdosed—and headed across the hall into room 231, bringing their stuff with them.

A few minutes later, Banks and Long, who both had outstanding arrest warrants, left the motel and Banks stashed the red duffel bag in his car. Long and Banks then went back into the motel allegedly to get Long, Salyers and Mullins' laundry out of the motel's

4

laundry room. Banks left the laundry room with a white tote bag and entered the motel's breakfast room. While Long and Banks were eating, Long noticed a gun in Banks' pocket.

After they finished their breakfast, Long and Banks returned to the laundry room with Banks still carrying the white bag. But by this time, the rescue squad and law enforcement had arrived in response to the 911 call. At first, they went to room 232, where Ringley had overdosed. While the rescue squad tended to Ringley, officers spoke with those who stayed behind with him. The police officers found an empty holster and learned that Banks and Long had been present. They also searched room 231. There, the officers found drug paraphernalia and a "rock of some kind," which they believed to be narcotics. J.A. 650–51.

The officers began to look for Banks and Long. They found them outside the motel's laundry room. As Long left the laundry room, police officers stopped her. After that, Banks left the white bag in the laundry room and tried to walk away. But before he could leave, a police officer stopped him as well.

The officers recovered the white bag from the laundry room. It contained 82 grams of methamphetamine, a gun and $836 in cash.

The officers also recovered Banks' red bag from his car. It contained 70 grams of methamphetamine, scales, a cellphone and another gun. An agent who examined the phone learned that the device user was named "Omar." He also discovered a Facebook account in the name of "Omar Banks" and email addresses bearing the names "omarbanks420" and "banksomar096" on the phone. A firearms expert identified the gun as a .380 caliber Hi-Point CF380 pistol with an orange snake grip.

5

II.

A federal grand jury indicted Banks for several offenses, two of which relate to the events of February 7, 2019, and are most relevant to this appeal.[1] Count 10 of the indictment charged Banks with possession with intent to distribute 50 or more grams of methamphetamine.[2] Count 11 of the indictment charged Banks with using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a drug trafficking crime.[3]

---

[1] In count 1, Banks was charged as part of a larger conspiracy with 20 others. Banks does not appeal any issues pertaining to his conviction under count 1 except the district court's admission of the Facebook evidence, which we address below. *See infra* Part IV.C.

[2] Count 10 of the indictment charged that:

On or about February 7, 2019, in the Western District of Virginia and elsewhere, OMAR KAREEM BANKS knowingly and intentionally possessed with the intent to distribute 50 grams or more of a mixture or substance containing methamphetamine, a Schedule II controlled substance. . . . All in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B).

J.A. 106.

[3] Count 11 of the indictment charged that:

BANKS knowingly used and carried during and in relation to, and possessed in furtherance of, a drug trafficking crime for which he may be prosecuted in a court of the United States (possession with the intent to distribute a mixture or substance containing methamphetamine, as set forth in Count Ten), a firearm. . . . All in violation of Title 18, United States Code, Section 924(c).

J.A. 106–07.

Banks' case proceeded to trial where multiple police officers, as well as Mullins and Long, testified. The witness testimony and the motel's video surveillance evidence reflect the events described above.

After closing arguments, the district court instructed the jury on the charges in the indictment. On the possession with intent to distribute charge, the court instructed that the government must prove:

> First. That Mr. Banks possessed with the intent to distribute *or distributed* the controlled substance; and
> Second. That Mr. Banks knew that the substance was a controlled substance; and
> Third. That Mr. Banks did so knowingly.

J.A. 928–29 (emphasis added). The "or distributed" language is the subject of Banks' constructive amendment argument.

The verdict form, however, did not contain that language. It asked whether Banks "[k]nowingly and intentionally possessed with intent to distribute [50 grams or more of] methamphetamine, on or about February 7, 2019." J.A. 989B. The jury found that he did and that Banks also "[k]nowingly used and carried a firearm during and in relation to, or possessed in furtherance of, a drug trafficking crime," on the same date. J.A. 989B. In fact, the jury found Banks guilty on every charged count.

The district court sentenced Banks to the statutory minimum of 240 months in prison, a period below the imprisonment range prescribed by the advisory Sentencing Guidelines. Banks timely appealed and we have jurisdiction pursuant to 28 U.S.C. § 1291.

7

III.

Banks challenges the district court's inclusion of "or distributed" in the jury instructions for the possession with intent to distribute charge. He argues that these two words constructively amended that count, and by extension the carrying and using a firearm in relation to drug trafficking count, by permitting the jury to convict on a basis— distribution—that was not in the indictment.

A.

The Fifth Amendment guarantees that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. amend. V. It is therefore "'the exclusive province of the grand jury' to alter or broaden the charges set out in an indictment." *United States v. Moore*, 810 F.3d 932, 936 (4th Cir. 2016) (quoting *United States v. Whitfield*, 695 F.3d 288, 309 (4th Cir. 2012)). If the district court, through its instructions "broadens the bases of conviction beyond those charged in the indictment, a constructive amendment—sometimes referred to as a fatal variance—occurs." *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999). Put differently, the Grand Jury Clause is violated "when the indictment is effectively altered 'to change the elements of the offense charged, such that a defendant is actually convicted of a crime other than that charged in the indictment.'" *United States v. Burfoot*, 899 F.3d 326, 338 (4th Cir. 2018) (quoting *United States v. Floresca*, 38 F.3d 706, 710 (4th Cir. 1994)).

B.

Importantly, Banks did not object to the instructions before the district court. Generally, we review an unpreserved argument for plain error. *United States v. Simmons*, 11 F.4th 239, 267 (4th Cir. 2021); *see also* Fed. R. Crim. P. 52(b). "To establish eligibility for plain-error relief, a defendant must satisfy three threshold requirements." *Greer v. United States*, 141 S. Ct. 2090, 2096 (2021). The defendant must establish that: (1) an error occurred; (2) the error was plain; and (3) the error affected his substantial rights. *Id.*; *United States v. Knight*, 606 F.3d 171, 177 (4th Cir. 2010). Finally, if the first three prongs are met, we will only exercise our discretion to correct the error if it satisfies a fourth prong, that it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993) (cleaned up). These four requirements are often called the *Olano* prongs of plain error review. The Supreme Court has cautioned that "[m]eeting all four prongs is difficult, as it should be." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (internal quotation marks and citation omitted).

But in our en banc decision in *United States v. Floresca*, 38 F.3d 706 (4th Cir. 1994), we concluded that "constructive amendments of a federal indictment are error *per se*." *Id.* at 714. In reaching this decision, we relied on language from the Supreme Court's decision in *Stirone v. United States*, 361 U.S. 212 (1960). We interpreted *Stirone*'s statement that "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him," *id.* at 217, "to mean that a constructive amendment of the indictment constitutes error *per se*." *Floresca*, 38 F.3d at 711. We also explained our belief that the Supreme Court would consider constructive amendments to be "structural defects." *Id.* at

9

712 (citing *Sullivan v. Louisiana*, 508 U.S. 275, 281 (1993)). We thus concluded that "a constructive amendment always 'affects substantial rights.'" *Id*. at 713. And we held that we must always exercise our discretion under the fourth *Olano* prong to correct such errors under Rule 52(b) because the possibility of "convicting a defendant of an unindicted crime affects the fairness, integrity, and public reputation of federal judicial proceedings in a manner most serious." *Id*. at 714.

Under the rule announced in *Floresca*, if the district court constructively amended the indictment by including the "or distributed" language in its jury instructions, we would be compelled to vacate Banks' conviction. The government argues, however, that we should not follow the per se rule in *Floresca* based on more recent Supreme Court precedent. A panel of this Court cannot overrule a precedential decision, let alone an en banc ruling. *McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004). But we need not follow precedent by a panel or by the court sitting en banc "'if the decision rests on authority that subsequently proves untenable'" considering Supreme Court decisions. *United States v. Williams*, 808 F.3d 253, 261 (4th Cir. 2015) (quoting *U.S. Dep't of Health & Hum. Servs. v. Fed. Lab. Relations Auth.*, 983 F.2d 578, 581–82 (4th Cir. 1992)). Authority is untenable if its reasoning or holding is inconsistent with a Supreme Court decision. *U.S. Dep't of Health & Hum. Servs.*, 983 F.2d at 582; *Etheridge v. Norfolk & W. Ry. Co.*, 9 F.3d 1087, 1090–91 (4th Cir. 1993) (concluding that the Court was no longer bound by a decision after "a superseding contrary decision of the Supreme Court . . . specifically rejected the reasoning on which [that decision] was based and that, accordingly, [that decision] is no longer a correct statement of the law"). Thus, we must

10

consider whether either *Floresca*'s reasoning or holding are inconsistent with subsequent Supreme Court decisions.

C.

To do so, we examine a series of Supreme Court cases that began just three years after *Floresca*. In *Johnson v. United States*, 520 U.S. 461, 463 (1997), the Supreme Court applied plain error review when the materiality element of a perjury conviction was decided by the district court, not the jury. The Supreme Court rejected the claim that plain error did not apply because of the seriousness of the error. In applying plain error, it found that the error was plain and assumed that it affected substantial rights. *Id*. at 468–69. But it declined to reverse the conviction based on the error because the fourth prong of *Olano*'s plain error review could not be satisfied. As the evidence related to the omitted materiality element was "overwhelming" and "essentially uncontroverted," the Court held that declining to reverse would not "seriously affect[] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 470 (internal quotation marks omitted). In fact, under the circumstances there, it felt reversing would have that effect. The Court reasoned, "[r]eversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it." *Id.* (internal quotation marks omitted).

Then, five years later in *United States v. Cotton*, 535 U.S. 625 (2002), the Supreme Court addressed whether an "*Apprendi* error"—the omission from a federal indictment of a fact that enhances the statutory maximum sentence later added by the district court for

11

sentencing—should undergo plain error review. [4] *Id.* at 628. Our Court, being the lower court in *Cotton*, had determined that "because an indictment setting forth all the essential elements of an offense is both mandatory and jurisdictional," the district court lacked "jurisdiction to . . . *impose a sentence* for an offense not charged in the indictment." *United States v. Cotton*, 261 F.3d 397, 404–05 (4th Cir. 2001) (emphasis in original) (citations omitted), *rev'd*, 535 U.S. 625 (2002). We relied on *Floresca* in holding "the error should be noticed." *Id.* at 406. We explained that the "district court's actions . . . did not technically result in a constructive amendment of the indictment as the court did not broaden 'the possible bases for *conviction* beyond those presented by the grand jury.'" *Id.* at 405 (emphasis in *Cotton*) (quoting *Floresca*, 38 F.3d at 710). But we reasoned that "there is no question that 'the effect of what it did was the same,' because the district court sentenced the appellants for a crime with which they were never charged." *Id.* (quoting *Stirone*, 361 U.S. at 217). We determined that an indictment error of this kind always "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* at 406.

The Supreme Court reversed. It held that violations of the Grand Jury Clause do not automatically require reversal. *Cotton*, 535 U.S. at 632–33. Instead, it applied *Olano*'s standard for plain error review to the alleged indictment defect. *Id.* at 631–32. The Court found plain error but did not reach the third step of the inquiry, which would have addressed

---

[4] In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Id.* at 490. In federal prosecutions, such facts must also be charged in the indictment. *Id.* at 476.

whether this type of error is a "structural error." *Id.* at 632–33. Instead, it resolved the case at *Olano*'s fourth step. *Id.* The Court concluded that "even assuming respondents' substantial rights were affected, the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.*

The Supreme Court also specifically addressed *Stirone*, which we relied on in our *Floresca* and *Cotton* decisions, in holding that a defendant cannot be tried on charges not set forth in the indictment. *See Cotton*, 261 F.3d at 405; *Floresca*, 38 F.3d at 714–15. The Court distinguished *Stirone* because there, "proper objection had been made in the District Court to the sufficiency of the indictment." *Cotton*, 535 U.S. at 631. But where defendants failed to object to alleged errors at trial, as in *Cotton* and here, plain error review was required. *Id.*

Banks argues that *Floresca* is still good law. He insists that it could not have been rendered untenable by *Cotton* or *Johnson* because neither of those cases involved a constructive amendment. He also points out that the Fourth Circuit has continued to cite *Floresca*, even after *Johnson* and *Cotton*, for the rule that constructive amendments are per se reversible. *See, e.g.*, *Simmons*, 11 F.4th at 269–70; *United States v. Miltier*, 882 F.3d 81, 93 (4th Cir. 2018); *Whitfield*, 695 F.3d at 307; *United States v. Rendelman*, 641 F.3d 36, 49 (4th Cir. 2011) (citing *Randall*, 171 F.3d at 203, which cited *Floresca*); *United States v. Robinson*, 627 F.3d 941, 958 (4th Cir. 2010); *United States v. Foster*, 507 F.3d 233, 242 (4th Cir. 2007). Thus, Banks maintains that *Floresca* requires us to vacate his conviction.

But these arguments are not persuasive. First, Banks reads *Cotton* far too narrowly. *Cotton* broadly rejected "the view that indictment omissions deprive a court of

jurisdiction." 535 U.S. at 631. The Supreme Court did not limit its discussion to omissions, however. Rather, it referred to the broader concept of "indictment defects." *Id.* at 631–32. ("[D]efects in an indictment do not deprive a court of its power to adjudicate a case. . . . '[T]hat the indictment is defective does not affect the jurisdiction of the trial court to determine the case presented by the indictment.'" (citations omitted)). So a constructive amendment—which permits a jury to convict on a basis not included in the indictment—falls comfortably within *Cotton*'s reach.

Banks likewise identifies no meaningful reason why a constructive amendment error should be reviewed differently than the *Apprendi* error addressed by *Cotton*. For example, he cannot articulate any greater harm or risk in a constructive amendment error, as compared to an *Apprendi* error, that would warrant a per se reversal. He simply insists that a constructive amendment error is distinct. In that narrow sense, he is right. But distinctions, of course, do not require different treatment. Our precedent compels a more substantive analysis. We must not only consider if *Floresca* was overruled by *Cotton*; we must also consider whether the reasoning of *Cotton* renders *Floresca* untenable. *See Williams*, 808 F.3d at 261. Once again, to answer this question, we consider whether *Floresca*'s reasoning or holding is inconsistent with *Cotton*. Both are.

*Floresca* relied on *Stirone*, but *Cotton* clarified that *Stirone* involved preserved challenges to "the sufficiency of the indictment," *Cotton*, 535 U.S. at 631, not unpreserved indictment errors like we have here. *Cotton* also held indictment omissions—a term that includes constructive amendments—were subject to plain error review. *Cotton*, 535 U.S. at 631. For both reasons, *Floresca*'s reasoning and holding are inconsistent with *Cotton*.

14

As a result, *Floresca* is no longer tenable. *U.S. Dep't of Health & Hum. Servs.*, 983 F.2d at 582.

And likewise, Banks overstates our Court's post-*Johnson* and post-*Cotton* decisions addressing *Floresca*. Generally, those decisions found no constructive amendment and merely restated the rule from *Floresca*. And none grappled with how *Floresca* survives *Cotton* or *Johnson*. *See*, *e.g.*, *Miltier*, 882 F.3d at 93 (restating the rule in *Floresca* but finding there was not a constructive amendment and not citing *Cotton* or *Johnson*); *Rendelman*, 641 F.3d at 43, 49 (restating the rule in *Floresca* by citing *Randall*, 171 F.3d at 203, but finding there was not a constructive amendment and not citing *Cotton* or *Johnson*); *Robinson*, 627 F.3d at 958 (finding no constructive amendment and only citing *Johnson* for a different plain error argument); *Foster*, 507 F.3d at 242 (restating the rule in *Floresca* but finding there was not a constructive amendment and only citing *Cotton* for a different plain error argument). Any discussion in those cases of the per se reversal rule announced in *Floresca*, therefore, constitutes dicta.

The closest reaffirmation comes from *Whitfield*. In *Whitfield*, we concluded that there was a constructive amendment to the indictment and that the error was "fatal and reversible per se." 695 F.3d at 308 (citations omitted). But that case is distinguishable because there, the defendant objected to the constructive amendment at trial. *Id*. at 299. As a result, the alleged constructive amendment would not have been examined under plain error review. *Id.* at 307. We thus did not face the potential applicability of *Johnson* or *Cotton*.

What's more, we are now the only circuit that requires automatic reversal for constructive amendment cases. *See United States v. Brandao*, 539 F.3d 44, 57, 61–63 (1st Cir. 2008); *United States v. Bastian*, 770 F.3d 212, 219–20 (2d Cir. 2014); *United States v. Greenspan*, 923 F.3d 138, 153 (3d Cir. 2019) (concluding it "need not decide whether the government constructively amended the indictment, whether it did so plainly, or whether any error prejudiced [the defendant]" because "[e]ven if *Olano*'s first three prongs are all met . . . its fourth prong is not"); *United States v. Daniels*, 252 F.3d 411, 413–14, 414 n.8 (5th Cir. 2001); *United States v. Russell*, 595 F.3d 633, 643–44 (6th Cir. 2010); *United States v. Remsza*, 77 F.3d 1039, 1044 (7th Cir. 1996); *United States v. Gavin*, 583 F.3d 542, 546–47 (8th Cir. 2009); *United States v. Jingles*, 702 F.3d 494, 502 (9th Cir. 2012) ("In *Cotton*, the Supreme Court held, on plain error review, that a constructive amendment did not require automatic reversal."); *United States v. Gonzalez Edeza*, 359 F.3d 1246, 1251 (10th Cir. 2004) ("Following the teachings of *Cotton* and *Johnson*, we find that Mr. Gonzalez Edeza cannot satisfy [the fourth *Olano*] prong and has therefore failed to establish plain error."); *United States v. Madden*, 733 F.3d 1314, 1319–20 (11th Cir. 2013); *United States v. Hall*, 610 F.3d 727, 743–44 (D.C. Cir. 2010).

We recently recognized, in *Simmons*, the possibility that *Cotton* and *Johnson* overruled *Floresca.* But we did not resolve the issue because there the government had not addressed it. 11 F.4th at 269–70. Despite that, we noted:

> There is a legitimate question as to whether *Floresca*'s *per se* reversal rule in plain error constructive amendment cases remains doctrinally sound in the wake of the Supreme Court's post-*Olano* plain error jurisprudence, most prominently the decisions in [*Johnson*, *Cotton*, and *United States v. Marcus*,

16

560 U.S. 258 (2010)[5]]. After all, while some courts treat the issue of prejudice for purposes of *Olano*'s third prong differently, we are the *only* circuit that requires a panel to exercise its discretion to notice and correct constructive amendments on plain error review.

. . . The Government has not made that argument—that *Floresca* is no longer good law in light of the Supreme Court's opinions in *Johnson*, *Cotton*, and *Marcus*—before us. So we decline to take a position on whether that intervening precedent compels us to abandon parts of *Floresca*'s holding and apply the decision as it stands.

*Id.* at 269 n.20.

Today, that issue is squarely before us. And because of *Cotton* and *Johnson*, we conclude our *Floresca* decision is no longer tenable. Constructive amendments, like other indictment errors, do not require per se reversal. If our prior decisions require a different result, those holdings are undermined by *Johnson* and *Cotton*. Accordingly, we are not bound to follow them. And although some of these cases were decided after *Cotton*, we find their reasoning inconsistent with Supreme Court authority and thus decline to follow it. We thus join all of our sister circuits that have addressed the issue to hold that, in the Fourth Circuit, alleged constructive amendments not objected to below are subject to plain error review.

---

[5] In *Marcus*, the Supreme Court addressed the Second Circuit's rule which in short, required a retrial "whenever there is any possibility, no matter how unlikely, that the jury could have convicted based exclusively on pre-enactment conduct." 560 U.S. at 262–63. The Court rejected this rule for requiring automatic reversal under the "plain error" standard for errors that do not meet the four plain error review prongs. *Id.* at 266. *Floresca*'s automatic reversal approach to constructive amendment errors similarly bypasses the plain error review prongs.

17

D.

Turning now to our plain error review, the government disputes the first prong of our inquiry—whether the district court constructively amended the indictment. But it concedes that if the district court did so, that the error was plain, satisfying the second prong of plain error review. And it also does not dispute that if the district court erred, the error affected Banks' substantial rights, satisfying the third prong of our inquiry.[6] Thus, the first contested issue before us is whether the district court constructively amended Banks' indictment. The parties vigorously dispute this issue. In any event, we need not resolve that dispute because, even if it were, under plain error review, it does not seriously affect the fairness, integrity or public reputation of the judicial proceedings.

*Cotton* is helpful in our analysis. There, the Supreme Court determined "[t]he evidence that the conspiracy involved at least 50 grams of cocaine base [which was not in

---

[6] Banks argues that constructive amendments are "structural errors" which he says categorically satisfy the third prong of the plain-error test. In *Cotton*, the Supreme Court expressly reserved the question of whether indictment errors are structural. *See* 535 U.S. at 632–33. However, the Supreme Court's more recent decisions reflect its view that structural errors are very rare. The Supreme Court has repeatedly made clear that "the 'general rule' is that 'a constitutional error does not automatically require reversal of a conviction.'" *Greer*, 141 S. Ct. at 2099 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991)). "Only in a 'very limited class of cases' has the Court concluded that an error is structural, and 'thus subject to automatic reversal' on appeal." *Id.* (quoting *Neder v. United States*, 527 U.S. 1, 8 (1999)). Structural errors are "highly exceptional" and include, for example, the "denial of counsel of choice, denial of self-representation, denial of a public trial, and failure to convey to a jury that guilt must be proved beyond a reasonable doubt." *United States v. Davila*, 569 U.S. 597, 611 (2013). But because of the government's concession, whether constructive amendments are "structural" is not before us. And even if Banks were correct that structural errors categorically satisfy the third prong of plain error review, they are still subject to plain error review's fourth prong. *See Johnson*, 520 U.S. at 469–70.

18

the indictment] was 'overwhelming' and 'essentially uncontroverted.'" 535 U.S. at 633. In making that determination, the Supreme Court stated:

> Much of the evidence implicating respondents in the drug conspiracy revealed the conspiracy's involvement with far more than 50 grams of cocaine base. Baltimore police officers made numerous state arrests and seizures between February 1996 and April 1997 that resulted in the seizure of 795 ziplock bags and clear bags containing approximately 380 grams of cocaine base. A federal search of [a respondent's] residence resulted in the seizure of 51.3 grams of cocaine base. A cooperating co-conspirator testified at trial that he witnessed [a different respondent] cook one-quarter of a kilogram of cocaine powder into cocaine base. Another cooperating co-conspirator testified at trial that she was present in a hotel room where the drug operation bagged one kilogram of cocaine base into ziplock bags. Surely the grand jury, having found that the conspiracy existed, would have also found that the conspiracy involved at least 50 grams of cocaine base.

*Id.* (internal citations to the record omitted). The Supreme Court ultimately concluded that "[t]he real threat then to the 'fairness, integrity, and public reputation of judicial proceedings' would be if respondents, despite the overwhelming and uncontroverted evidence . . . , were to receive a sentence prescribed for those committing less substantial drug offenses because of an error that was never objected to at trial." *Id*. at 634.

Here too, there was overwhelming and generally uncontroverted evidence that Banks possessed with the intent to distribute over 50 grams of methamphetamine. Banks took a red duffel bag out of a car, carrying it with him throughout the motel and later carrying it back to the car. And that red duffel contained more than 50 grams of methamphetamine itself. Banks also carried a white tote bag, which officers testified also contained more than 50 grams of methamphetamine, in the motel. Moreover, Mullins, Spider, Long and Salyers smoked all their own supply of methamphetamine. After that, Banks and Ringley arrived at the Super 8, brought a bag into the motel rooms—a bag which

19

the officers testified contained methamphetamine—and the group then resumed smoking methamphetamine. Besides the methamphetamine, the bag contained scales, baggies, cash and guns, which the government witnesses testified was paraphernalia related to drug activity. In addition, there was no evidence suggesting Banks distributed methamphetamine apart from his possession of it on February 7 at the motel. Indeed, the government never suggested, much less argued, that Banks distributed methamphetamine on February 7. Their entire case focused on possession with intent to distribute.

Based on this record, a jury could not have found Banks guilty of only distribution and not possession with intent to distribute. The overwhelming and uncontroverted evidence supports Banks' conviction for possession with intent to distribute. Vacating Banks' conviction and remanding for a new trial would not advance the fairness, integrity and public reputation of the courts. In fact, just like in *Johnson* and *Cotton*, the "real threat then to the 'fairness, integrity, and public reputation of judicial proceedings' would be if [Banks] despite the overwhelming and uncontroverted evidence" were to receive a new trial for an offense for which he has already been convicted. *See Johnson*, 520 U.S. at 470; *Cotton*, 535 U.S. at 625. Plain error review does not require reversal based on these unobjected-to errors.

IV.

Banks raises three other challenges on appeal. These, however, can be disposed of quickly.

20

## A.

Banks alternatively argues that count 10, and by association count 11, as instructed to the jury was duplicitous. He insists that the district court's inclusion of "or distributed" in its instruction created the possibility that the jury could have convicted him for either possession with intent to distribute or distribution. Banks did not raise a duplicity objection before the district court. Therefore, we review his argument for plain error. *United States v. Robinson*, 855 F.3d 265, 270 (4th Cir. 2017).

Ultimately, Banks does not provide any argument suggesting how he prevails at the fourth prong of plain error review. Thus, no reversal is required for duplicity. *Cf. Greer*, 141 S. Ct. at 2097 (noting that defendant bears the burden of establishing entitlement to relief for plain error by establishing each of the four requirements).

## B.

Banks asserts another duplicity argument. He contends that count 11 is duplicitous as charged in the indictment and as instructed because § 924(c) sets forth two distinct offenses. Banks argues that § 924(c) sets forth distinct "use and carry" and "possession" offenses. The inclusion of those two offenses in one count, according to Banks, improperly created "the risk that a jury divided on two different offenses could nonetheless convict for the improperly fused double count." *Robinson*, 855 F.3d at 269. "Such a jury would not unanimously agree on the offense that the defendant committed, violating the defendant's Sixth Amendment right to a unanimous verdict." *Id.* at 269–70.

Banks and the government agree that this argument should be considered under plain error review because Banks did not argue below that the indictment and instructions

impermissibly contain both "use and carry" and "possession" offenses. Banks fails to meet the requirements of plain error review. First, even if there were a duplicity error, it was not plain. There is a real question about whether count 11 was duplicitous at all. "[T]wo or more acts, each of which would constitute an offense standing alone may instead be charged in a single count if those acts could be characterized as part of a single, continuing scheme." *Burfoot*, 899 F.3d at 337 (internal quotation marks and ellipsis omitted). And in that situation, the Sixth Amendment is not violated. In contending that § 924(c) sets forth distinct "use and carry" and "possession" offenses, Banks relies on our unpublished decision in *United States v. Woods*, 271 F. App'x 338, 343 (4th Cir. 2008). As an "unpublished, non-precedential decision," *Woods* cannot establish the basis for a finding of plain error. *United States v. King*, 628 F.3d 693, 700 n.3 (4th Cir. 2011). That is even more clear considering our subsequent published authority where we have observed that "the number of offenses in § 924(c) is unsettled." *Robinson*, 627 F.3d at 957 n.4.

Second, Banks cannot show an impact upon his substantial rights. There is no evidence of "use and carry" of a firearm in the record separate from the evidence of "possession" of the firearm. Thus, to convict Banks of count 11 under either the "use and carry" or "possession" prongs, the jury would have to credit the same evidence. This negates any risk of a non-unanimous verdict and eliminates the prejudice from the third *Olano* prong. *Robinson*, 627 F.3d at 957–58 (rejecting a § 924(c) duplicity challenge under plain error because, among other reasons, the evidence established that the defendant violated the possession prong).

Finally, Banks does not make any argument on the fourth prong of plain error review. *Greer*, 141 S. Ct. at 2097. Because he has failed to carry his burden of establishing plain error, we reject Banks' duplicity argument related to count 11.[7]

C.

Banks also argues that the district court erred in admitting into evidence, over his objection, the certificate of authenticity of the Facebook records and the messages associated with the Facebook account bearing the "Banks" name. He contends the government provided no foundation showing that the "Omar Banks" referred to in the records was him or that the messages were written by him. "We review evidentiary rulings for an abuse of discretion." *United States v. Sterling*, 860 F.3d 233, 246 (4th Cir. 2017).

"A proponent of evidence must 'produce evidence sufficient to support a finding that the item is what the proponent claims it is.'" *United States v. Recio*, 884 F.3d 230, 236 (4th Cir. 2018) (quoting Fed. R. Evid. 901(a)). The authentication burden under Rule 901, however, "is not high." *Id.* (internal quotation marks omitted). "[O]nly a prima facie showing is required." *United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014). The district court need only conclude that "the jury *could* reasonably find that the evidence is authentic," not that the jury necessarily *would* so find. *See id.* (internal quotation marks and citation omitted) (emphasis added).

---

[7] In a pro se motion below, Banks asserted that count 11 was duplicitous as charged because it contained both "use[] and carr[y]." But his current argument is different and was not made below. Thus, we agree with the parties that plain error review is required. But even if we were to conclude that this issue had been preserved, any duplicity would be harmless for the same reasons.

At trial, the government presented a certification from a Facebook records custodian showing that the Facebook records containing the messages sent and received through the "Banks" account were made "at or near the time the information was transmitted by the Facebook user." J.A. 414–15, 502. Banks does not dispute that the Facebook user on one side of the messaging transactions involving the "Banks" account was, or was linked to, a co-conspirator. The username associated with the account was "Omar Banks," and the account bearing this name was present on a phone recovered from the vehicle at the motel from which Banks was observed exiting and entering. A 2018 message sent from the account identified the sender as "O, from Coeburn"—using Banks' nickname and place of residence in 2018. J.A. 504. The sender used coded language to express their need for two ounces of methamphetamine. Given this evidence, it was not an abuse of discretion for the district court to conclude that the jury could find Banks authored and received the messages. *See Hassan*, 742 F.3d at 133 (finding that Facebook records were adequately authenticated); *Recio*, 884 F.3d at 237 (same). Thus, we affirm the admission of the Facebook certificate and messages into evidence.

V.

For the reasons given above, the judgment below is

*AFFIRMED.*

24