**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 22-4317**

─────────────

UNITED STATES OF AMERICA,

       Plaintiff - Appellee

v.

HYSEN SHERIFI

       Defendant - Appellant.

─────────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Louise W. Flanagan, District Judge.  (5:09−cr−00216−FL−2)

─────────────

Argued:  May 7, 2024                         Decided:  July 9, 2024

─────────────

Before DIAZ, Chief Judge, and WILKINSON and KING, Circuit Judges.

─────────────

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Chief Judge Diaz and Judge King joined.

─────────────

**ARGUED:**  Cullen Oakes Macbeth, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellant.  Danielle Tarin, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  James Wyda, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellant.  Matthew G. Olsen, Assistant Attorney General, National Security Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Michael Francis Easley, Jr., United States Attorney, David A. Bragdon, Assistant United States Attorney, OFFICE OF UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

WILKINSON, Circuit Judge:

In 2011, Hysen Sherifi was convicted of five federal offenses arising from his participation in a terrorism conspiracy. The district court sentenced him to 540 months' imprisonment, and we affirmed. *United States v. Hassan*, 742 F.3d 104, 151 (4th Cir. 2014). The Supreme Court subsequently held, however, that certain applications of a statute under which Sherifi was twice convicted—18 U.S.C. § 924(c)—were unconstitutional. *See United States v. Davis*, 588 U.S. 445, 470 (2019). Upon Sherifi's filing of a 28 U.S.C. § 2255 motion, the district court found his § 924(c) convictions were unconstitutional under *Davis* and set them aside. The court resentenced Sherifi on the remaining three counts to 516 months' imprisonment.

Sherifi appealed, arguing that we should remand the case for another resentencing because, in his view, the district court committed a procedural error at sentencing and impermissibly sentenced him based on facts not found by the jury. Because we find no reversible error, we affirm the judgment below.

I.

A.

Fueled by violent Islamic extremism, Sherifi participated in a terrorism conspiracy from 2008 to 2009. Sherifi befriended figures in North Carolina who shared his view that Islamic jihad meant "to fight physically with weapons against the enemies of Islam, wherever they are at and whoever they might be." *Hassan*, 742 F.3d at 122. He defined such enemies of Islam as "everyone who did not share [his] . . . violent ideology," and thus advocated for "murderous acts against innocent soldiers and civilians." *Id.* Ultimately,

2

Sherifi planned to die as a martyr, which he viewed as "an important goal for a good Muslim." *Id.* at 121.

Sherifi did what he could to support the efforts of other violent jihadists. He donated money and fundraised alongside his co-conspirators to support terrorism abroad. *Id.* He established contact with a wanted terrorist and helped others engage in jihadist weapons training. *Id.* at 122. Sherifi also shared extremist videos with an FBI informant, including lectures by the radical cleric Anwar Al-Awlaki and a video of a beheading that Sherifi used to threaten death upon those who left Islam. *Id.*

Beyond supporting the extremist ambitions of others, Sherifi also sought to commit violent jihad himself. Sherifi's initial plan was to fight alongside jihadists in Jerusalem, and he also considered fighting in Chechnya or Syria. *Id.* at 121. He obtained documentation to travel overseas, studied military tactics, and traveled to Kosovo, where he engaged in firearms training alongside other Muslim extremists. *See id.* at 121–24. Eventually, Sherifi revealed to an FBI informant that "Allah ha[d] opened a way for [him]" to get to the Middle East and engage in jihad. *Id.* at 122 (alterations in original).

However, Sherifi first chose to return to North Carolina, where he told associates that he was raising money to buy "farmland in Kosovo to be used by his jihadist 'brothers' en route to the battlefield." *Id.* at 123. While stateside, Sherifi "developed a scheme" with a co-conspirator "to attack the Quantico Marine Corps Base in eastern Virginia." *Id.* They discussed infiltrating the base to "kidnap[] a Marine officer," with the goal being to seize "a general or someone of high rank." *Id.* Sherifi believed he had a skillset fit for attacking Quantico because he had previously made truck deliveries at what is now Fort Liberty in

North Carolina and "boasted . . . about how easy it was, as a delivery truck driver, to access such military facilities." *Id.*

To support this and other jihadist goals, Sherifi helped build a weapons bunker on a co-conspirator's property in North Carolina, participated in two weapons training sessions there, and sought to recruit likeminded individuals to train with him and his co-conspirators. *Id.* at 123–24. Unbeknownst to Sherifi, however, FBI informants had infiltrated the operation. *See id.* at 121–24. Sherifi and his co-conspirators were arrested before they could attack Quantico or carry out their other plans. *See id.* at 124.

B.

Sherifi was charged by a federal grand jury in the Eastern District of North Carolina with five counts:

- Count One: Conspiracy to violate 18 U.S.C. § 2339A, that is, to provide material support and resources for violations of 18 U.S.C. § 956;

- Count Two: Conspiracy to violate 18 U.S.C. § 956(a), that is, to commit outside the United States acts that would constitute murder, kidnapping, and maiming if committed within the United States;

- Counts Four and Eight: Possession of firearms in furtherance of a crime of violence—particularly, the Count Two conspiracy—in violation of 18 U.S.C. § 924(c); and

- Count Eleven: Conspiracy to violate 18 U.S.C. § 1117, that is, to kill members of the uniformed services of the United States in attacks on military personnel and installations in Virginia and elsewhere.

*Id.* at 110–11.

After a three-week trial alongside two co-defendants, a jury found Sherifi guilty of all five counts. *Id.* at 111, 114–15.

4

At Sherifi's initial sentencing, the district court applied the Sentencing Guidelines to find a total offense level of 43 and a criminal history category of VI—the highest possible combination of offense level and criminal history category on the Sentencing Guidelines Table. *See* J.A. 3899. The court thus found that the Guidelines recommended the statutory maximum sentence on each count: 180 months' imprisonment for Count One, life imprisonment for Count Two, 60 months' mandatory imprisonment consecutive to any other sentence for Count Four, 300 months' mandatory imprisonment consecutive to any other sentence for Count Eight, and life imprisonment for Count Eleven. *See Hassan*, 742 F.3d at 147.

The district court decided, however, to vary downward significantly from the Guidelines recommendation. It sentenced Sherifi to concurrent 180-month terms on Counts One, Two, and Eleven; a consecutive 60-month term on Count Four; and a consecutive 300-month term on Count Eight. *Id.* at 147 n.37. The district court "granted [Sherifi's] motion for downward variance from the Guidelines range of life imprisonment as to the conspiracy counts in part due to the mandatory consecutive sentence of 360 months' imprisonment on counts four and eight." *Sherifi v. United States*, No. 5:09-CR-216-FL-2, 2020 WL 5026846, at *1 (E.D.N.C. Aug. 25, 2020).

Sherifi appealed, arguing his convictions violated the First Amendment and positing that his sentences were procedurally and substantively unreasonable. *See Hassan*, 742 F.3d at 125, 148, 150. We rejected these arguments and affirmed. *Id.* at 151.

Separately, while serving his prison sentence, Sherifi hatched a plot to murder federal agents and informants who testified against him. *See* J.A. 4182. Sherifi was once

again thwarted by the FBI, and he was convicted in federal court of conspiracy to commit murder for hire and related offenses. *United States v. Sherifi*, No. 7:12-CR-20-BR, 2013 WL 2300519, at *1 (E.D.N.C. May 15, 2013). He was sentenced to life imprisonment and did not appeal. *See Sherifi v. United States*, No. 7:12-CR-20-BR (E.D.N.C. May 22, 2019).

Sherifi did, however, file a 28 U.S.C. § 2255 motion in the instant case. He argued that the Supreme Court's ruling in *United States v. Davis*, 588 U.S. 445 (2019), rendered his two convictions for possession of a firearm in furtherance of a crime of violence under 18 U.S.C. § 924(c) unconstitutional. The district court agreed and held that Sherifi's § 924(c) convictions must be vacated because the predicate offense, the Count Two conspiracy, was not a crime that "necessarily require[d] the use, attempted use, or threatened use of physical force" as required by *Davis*. *Sherifi*, 2020 WL 5026846, at *3 (quoting *United States v. Simms*, 914 F.3d 229, 233 (4th Cir. 2019) (en banc)). The court further found that "full resentencing on the conspiracy convictions"—Counts One, Two, and Eleven—was "the appropriate remedy" because "the court departed downwardly at [Sherifi's] original sentencing due to the lengthy [mandatory] sentences on the § 924(c) convictions." *Id.* at *4.

As part of Sherifi's resentencing, the Guidelines range was recalculated by the U.S. Probation Office in a Presentence Investigation Report. *See* J.A. 4124. The report explained how the vacated § 924(c) convictions were mandatory consecutive counts that "had no effect on the original [G]uideline imprisonment calculation and range." *Id.* Sherifi's total offense level thus remained 43, and his criminal history category remained VI. *Id.* As such, his Guidelines recommendation remained the statutory maximum for each count: 180

6

months' imprisonment for Count One, life imprisonment for Count Two, and life imprisonment for Count Eleven. *Id.*

At the resentencing hearing, the district court sentenced Sherifi to 180 months of imprisonment on Count One concurrent with 516 months on Counts Two and Eleven for "a total term of incarceration of 516 months." J.A. 4190. The upshot of the resentencing was that Sherifi's sentence was reduced by 24 months—from 540 months to 516 months. The district court credited positive steps that Sherifi had taken in prison since his initial conviction as a reason for the reduced sentence, but concluded that a lengthy sentence remained necessary given the "dangerousness" of the offense, the importance of "discourag[ing] this type of conduct," and the need "to promote respect for the law." J.A. 4188. Sherifi timely appealed.

## II.

In this appeal, Sherifi challenges his revised sentence on three grounds. He first contends that the district court erred procedurally by failing to acknowledge his argument that the Guidelines' terrorism enhancement should not have been applied. He next claims that his Sixth Amendment right to a jury trial was violated because he was sentenced for conspiring to murder or kidnap when the jury found only that he conspired to murder, kidnap, or maim. And he argues finally that he received a hate-crime enhancement at sentencing despite the jury's not finding improper motivation. We take each contention in turn.

7

A.

The terrorism enhancement in U.S.S.G. § 3A1.4(a) adds twelve offense levels to a sentence and places a defendant in the highest possible criminal history category of VI. Sherifi claimed at his resentencing hearing that applying the terrorism enhancement would cause the district court to "not consider Sherifi's actual characteristics in the proper way," given that it "rachets [up] a defendant's range . . . regardless of the defendant's role in the offense, the actual danger to the community or the government, his actual Criminal History Category, or any of the factors usually considered" in determining a sentence. S.J.A. 4238–39. In Sherifi's view, the district court failed to acknowledge this argument, and thus committed a significant procedural error. Sherifi therefore contends that we should reverse for another resentencing.

We disagree. The district court did not commit a significant procedural error on this issue because it adequately explained its sentence, applied the § 3553(a) factors, and granted Sherifi's request for a downward variance based on his individual circumstances.

The Supreme Court has instructed that "appellate review of sentencing decisions is limited to determining whether they are 'reasonable.'" *Gall v. United States*, 552 U.S. 38, 46 (2007). We review the procedural reasonableness of a sentence by applying "a deferential abuse-of-discretion standard." *United States v. Lynn*, 912 F.3d 212, 216 (4th Cir. 2019) (quoting *Gall*, 552 U.S. at 41).

Under this standard, we will uphold the sentence unless the district court committed a "significant procedural error." *Gall*, 552 U.S. at 51. One such error is "failing to adequately explain the chosen sentence." *United States v. Zuk*, 874 F.3d 398, 409 (4th Cir.

8

2017) (quoting *Gall*, 552 U.S. at 51). To that end, "a district court must address or consider all non-frivolous reasons presented for imposing a different sentence and explain why [it] has rejected those arguments." *United States v. Ross*, 912 F.3d 740, 744 (4th Cir. 2019); *see also United States v. Slappy*, 872 F.3d 202, 207 (4th Cir. 2017). "Sometimes the circumstances will call for a brief explanation; sometimes they will call for a lengthier explanation." *Rita v. United States*, 551 U.S. 338, 357 (2007). A district court's explanation is sufficient if it "set[s] forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Id.* at 356. In other words, the explanation must "allow for meaningful appellate review" and "promote the perception of fair sentencing." *Gall*, 552 U.S. at 50.

The district court did not commit a significant procedural error in its application of the terrorism enhancement. The court explicitly adopted its findings from the initial sentencing of why the terrorism enhancement applied, observed that the enhancement increased Sherifi's recommended sentence under the Guidelines, and gave credence to Sherifi's argument that the terrorism enhancement's placement of Sherifi in criminal history category VI masked his positive personal characteristics when it sentenced Sherifi to well below the Guidelines recommendation.

As Sherifi conceded, the district court "incorporate[d] and re-adopt[ed] the findings it had made at the original 2012 sentencing regarding why the terrorism enhancement applied." Appellant's Br. at 26 (citing J.A. 4177–78); *see also* J.A. 4188–89. At the initial sentencing, the district court explained that it was applying the terrorism enhancement

9

because Sherifi's offense was "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." J.A. 4070 n.5 (quoting 18 U.S.C. § 2332b(g)(5)). This finding accorded with Sherifi's and his co-conspirators' objective "to kill non-Muslims, specifically those they believed were living unjustly in Muslim lands." *Id.* The district court thereby considered Sherifi's challenge to the application of the terrorism enhancement at his original sentencing and provided a reasoned basis for rejecting it. *See Rita*, 551 U.S. at 356.

Sherifi contends, however, that mere incorporation of this prior reasoning was insufficient here. He claims that he made a new argument at resentencing: that the terrorism enhancement's automatic placement of him in criminal history category VI under the Guidelines vitiated the court's ability to consider his positive personal characteristics. And, in his view, the district court insufficiently addressed this argument at resentencing.

Not so. The district court extensively considered Sherifi's individualized circumstances at resentencing after acknowledging the effect of the terrorism enhancement on his Guidelines calculation. The court told Sherifi that "the guidelines slide you over to a level VI and drive a lengthy sentence in that part," despite the court's belief that without the terrorism enhancement, "I'm confident that when I get to the criminal history page, I would, as I see, zero points, which would put you in category I." J.A. 4153–54. The court then spent a significant part of the resentencing hearing discussing Sherifi's personal characteristics. Most of its attention was on Sherifi's positive behavior in prison, including his educational pursuits, employment in positions of trust, and reestablishment of relationships with his family. *See* J.A. 4154–62. The court told Sherifi there was "a lot to

10

laud here for the way that you've behaved yourself in prison," J.A. 4156, and gave him "credit for . . . using [his] time as constructively as possible." J.A. 4160. The court's detailed consideration of Sherifi's personal circumstances undermines his argument that the terrorism enhancement caused the court to "not consider Sherifi's actual characteristics in the proper way." S.J.A. 4239.

Far from ignoring Sherifi's argument regarding the overly punitive effect of the terrorism enhancement, the district court explicitly credited it by granting Sherifi a significant downward variance in his sentence. After conducting its individualized assessment of Sherifi's circumstances, the court ultimately concluded that the Guidelines recommendation of "a life sentence" was "too long." J.A. 4188. It thus chose to "take two years off" the original sentence of 540 months—which was itself a downward variance from the Guidelines recommendation of life imprisonment—"for the significant growth that [Sherifi had] demonstrated." J.A. 4190. In doing so, the court noted that it "linger[ed]" on the "dangerousness" factor of 18 U.S.C. § 3553(a) given that "[t]he need to discourage this type of conduct" and "to promote respect for the law also loom large in this case." J.A. 4188. It thus found that a sentence of "a total term of incarceration of 516 months" was "sufficient but not greater than necessary." J.A. 4190.

The district court's reincorporation of its reasoning for applying the terrorism enhancement and its engagement with Sherifi's personal characteristics make clear that there was no abuse of discretion. Not only did the court acknowledge Sherifi's argument about the importance of considering his personal characteristics. It accepted it. Moreover, Sherifi can hardly take exception to the district court's view that the lethal purposes of his

extensive planning warranted a significant term of confinement. Sherifi's quarrel seems as much with the terrorism enhancement in general as with the district court's application of it. But such general challenges to the judgments of Congress and the Sentencing Commission are not generally ours to accept. The care taken by the district court in this particular resentencing was a far cry from a significant procedural error.

## B.

Sherifi next contends that the court committed an *Apprendi* error in violation of his Sixth Amendment right to a jury trial because it sentenced him to a greater sentence than allowed by the facts found by the jury beyond a reasonable doubt. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Specifically, Sherifi observes that the maximum sentence for 18 U.S.C. § 956—the statute under which he was convicted on Count Two—varies depending on the object of the conspiracy. If the conspiracy was to murder or kidnap persons abroad, then the statute authorizes life imprisonment. *See* 18 U.S.C. § 956(a)(2)(A). But if the conspiracy was instead to maim persons abroad, then the statute authorizes "imprisonment for not more than 35 years," or 420 months. *Id.* at § 956(a)(2)(B). According to Sherifi, the jury never determined the object of the conspiracy, so he could only be sentenced for a conspiracy to maim. Therefore, he posits that his sentence of 516 months on Count Two was an *Apprendi* error.

Because Sherifi did not raise this issue below, we review for plain error. *United States v. Banks*, 29 F.4th 168, 174 (4th Cir. 2022). Sherifi thus has the burden of showing (1) an error occurred that (2) was plain, (3) affected his substantial rights, and (4) "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting

12

*United States v. Olano*, 507 U.S. 725, 732 (1993)).

The government agrees with Sherifi that a plain *Apprendi* error occurred. The district court did not instruct the jury to explicitly find whether the conspiracy's object was to murder or kidnap, or to maim. One part of the court's instructions to the jury suggested that the object of the conspiracy was "to murder, kidnap, maim and injure persons in a foreign country." J.A. 3804. But in its recitation of Count Two's elements, the court instructed the jury that the government had to prove the defendants joined the conspiracy "knowing and intending that the object of the conspiracy was to murder, kidnap *or* maim someone outside the United States." J.A. 3805 (emphasis added). Moreover, the verdict form did not differentiate between murdering, kidnapping, or maiming. Instead, it simply asked whether Sherifi was guilty or not guilty of Count Two. J.A. 3866. Therefore, the jury was not asked to make, and did not make, a specific finding that Sherifi conspired to commit murder or kidnapping. And so his sentence on Count Two for 516 months was a plain *Apprendi* error because it was over the 420-month maximum sentence for conspiracy to maim persons abroad under § 956(a)(2)(B).

Because a plain *Apprendi* error occurred, we must assess whether Sherifi has shown that the error affected his substantial rights and "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Banks*, 29 F.4th at 174 (quoting *Olano*, 507 U.S. at 732). An error affects a defendant's substantial rights if it was "prejudicial," *Olano*, 507 U.S. at 734, meaning there is "a reasonable probability that the error affected the outcome" of the district court proceeding. *United States v. Rangel*, 781 F.3d 736, 745 (4th Cir. 2015) (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)). An *Apprendi* error

13

does not seriously affect the fairness, integrity, or public reputation of judicial proceedings if evidence supporting the fact that should have been found by the jury beyond a reasonable doubt was "overwhelming" and "essentially uncontroverted." *United States v. Cotton*, 535 U.S. 625, 633 (2002) (quoting *Johnson v. United States*, 520 U.S. 461, 470 (1997)); *accord United States v. Smith*, 441 F.3d 254, 272 (4th Cir. 2006).

Sherifi has not demonstrated that the *Apprendi* error was prejudicial because he failed to show "a reasonable probability that the error affected the outcome" of the district court proceeding. *Marcus*, 560 U.S. at 262. Resentencing Sherifi on Count Two would not affect his concurrent 514-month sentence on Count Eleven for conspiring to kill members of U.S. military in violation of 18 U.S.C. § 1117. *See* J.A. 4190, 4200. So, even if the error were rectified, Sherifi's total prison term would remain 514 months.

The concurrent sentence doctrine permits us to "decline to review a sentencing claim 'where the challenged sentence runs concurrently with a valid sentence of an equal or greater duration,' so that even a successful appeal would have no effect on a defendant's actual prison term." *United States v. Skaggs*, 23 F.4th 342, 346 (4th Cir. 2022) (quoting *United States v. Charles*, 932 F.3d 153, 160 (4th Cir. 2019)). The concurrent nature of the 514-month sentences on Count Two and Count Eleven means that a resentencing on only Count Two "would have no effect on [Sherifi's] actual prison term." *Id.* Additionally, it can be "foreseen with reasonable certainty" that Sherifi would "suffer no adverse collateral consequences" by a decision not to vacate and remand his sentence on Count Two. *Charles*, 932 F.3d at 155; *see* J.A. 4201 (setting the 5-year terms of supervised release that Sherifi received on Count Two and Count Eleven to run concurrently). Therefore, we find the error

14

here did not affect Sherifi's "substantial rights," and we see no reason to send the case back to the district court for yet another resentencing. *Olano*, 507 U.S. at 732.

Sherifi has also failed to show that the *Apprendi* error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. That is because the evidence that he conspired to murder, and not solely to maim, persons abroad was "overwhelming" and "essentially uncontroverted." *Cotton*, 535 U.S. at 633; *Smith*, 441 F.3d at 272. Sherifi and his co-conspirators' "goal was to kill non-Muslims, specifically those they believed were living unjustly in Muslim lands." *Hassan*, 742 F.3d at 149. Multiple witnesses testified that Sherifi and his co-conspirators planned to travel overseas to fight and kill non-believers. J.A. 1101, 1258–61, 2201, 2248, 2269–70, 2732–33, 2858. Indeed, Sherifi explicitly told an FBI informant that he "wanted to kill" people and would travel abroad to do so. J.A. 1243; *see* J.A. 1241, 1260–61. To prepare for such killing, "Sherifi participated in firearms training with like-minded individuals" while on a trip to Kosovo. *Hassan*, 742 F.3d at 143. Sherifi also ran shooting drills with assault weapons in North Carolina, where he lamented that the ammunition they were firing would be better used "to kill" non-believers. J.A. 1112; *see* J.A. 3625. He sought to use these high-powered rifles given their capacity to "kill a thousand" infidels. J.A. 1101. The copious evidence that Sherifi intended to kill, and not just to maim, was why the government repeatedly emphasized in its closing argument that the object of the conspiracy was to kill non-believers. *See, e.g.*, J.A. 3589, 3593, 3601, 3604.

In addition to being overwhelming, the evidence that the object of the conspiracy was to kill was also "essentially uncontroverted." *Cotton*, 535 U.S. at 633; *Smith*, 441 F.3d

15

at 272. Sherifi made no attempt to argue that his conspiracy was aimed at maiming victims as opposed to killing them. He instead posited that he did not conspire to kill, kidnap, or maim persons overseas because he had no specific plan, objective, or victims. *See* J.A. 3669–70, 3674–84. But the jury rejected this argument by finding him guilty of violating § 956(a). It is only on appeal that Sherifi advances the improbable proposition that the jury, if asked, would have found he sought only to maim the victims of his planned jihad. We decline to indulge such far-fetched speculation. Rather, because the trial record amply demonstrated Sherifi conspired to kill, we reject his claim that the error seriously affected the fairness, integrity, or public reputation of the proceedings.

## C.

Sherifi's last contention is that the district court erred by applying U.S.S.G. § 3A1.1(a)'s hate-crime enhancement. The enhancement is relevant in all seasons and plainly does not lose its force at a time when religious antagonisms are on the march. That provision increases the defendant's offense level by three if the jury "determines beyond a reasonable doubt that the defendant intentionally selected any victim or any property as the object of the offense of conviction because of the actual or perceived . . . religion . . . of any person." U.S.S.G. § 3A1.1(a). Sherifi argues that the district court improperly invoked the hate-crime enhancement because the jury did not find beyond a reasonable doubt that he conspired to target victims on the basis of religion. Since Sherifi raises this issue for the first time on appeal, we again review for plain error. *See Banks*, 29 F.4th at 174.

Because Sherifi was not prejudiced by the hate-crime enhancement, his challenge to its application must fail. With or without the hate-crime enhancement, Sherifi's total

16

offense level was already at the maximum level of 43 due to the terrorism enhancement. *See* J.A. 3898–99. And so, since we have concluded that the district court correctly applied the terrorism enhancement to reach the maximum total offense level of 43, application of the hate-crime enhancement did not affect the outcome of the sentencing proceedings. *See* U.S.S.G. Ch. 5, Pt. A, App. Note 2 ("An offense level of more than 43 is to be treated as an offense level of 43."). Sherifi admitted as much when he conceded that "[s]tanding alone . . . the district court's § 3A1.1(a) error may not have affected the outcome of sentencing." Appellant's Br. at 39.

Sherifi was also not prejudiced by the hate-crime enhancement because the jury found him guilty of two different conspiracies to commit jihad, and thus necessarily found that he intentionally targeted non-Muslim victims based on their religion. The indictment and the government's theory of the case relied on the central premise that Sherifi and his co-defendants conspired to "advance violent jihad," which to them meant "fighting against the kuffar," a derogatory word for non-Muslims. *Hassan*, 742 F.3d at 112, 116. That was sufficient for the district court to apply the hate-crime enhancement. No part of U.S.S.G. § 3.A1.1(a) requires that the jury find the defendant's discriminatory motivation by special verdict, and we refuse to read such a requirement into the Guidelines. *See In Re Terrorism Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 154 (2d Cir. 2008) (upholding hate-crime enhancement when record showed that jury must have found conspiracy targeted victims based on national origin); *United States v. Pospisil*, 186 F.3d 1023, 1031 (8th Cir. 1999) (rejecting argument that Guidelines require jury to make a "special finding" before the sentencing court applies the hate-crime enhancement).

17

Nor can Sherifi show that the hate-crime enhancement, even if it was applied without the requisite jury finding, seriously affected the fairness, integrity, or public reputation of the judicial proceedings. The record is littered with testimony showing that Sherifi wanted to "kill a thousand . . . kuffar," J.A. 1101, that he thought "anyone who didn't even believe in the Prophet Mohammad was a legitimate target for jihad," J.A. 2201, and that he felt it was "obligatory" to attack any "non-Muslims [that] have entered into the Muslim land," J.A. 2248. Sherifi himself does not contest on appeal that he selected his victims on the basis of their religion. *See* Appellant's Br. at 37–41. Because the overwhelming and essentially uncontroverted evidence at trial "admits of only one result"—that Sherifi targeted his victims based on their religious beliefs—"there is simply no basis for concluding" that the application of the hate-crime enhancement "seriously affected the fairness, integrity or public reputation of judicial proceedings." *United States v. Brown*, 757 F.3d 183, 194 (4th Cir. 2014) (internal quotations omitted); *see also Cotton*, 535 U.S. at 633. We therefore reject Sherifi's request for resentencing.

### III.

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*