**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 20-4514**
_____

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

ENIL RAMON MONTOYA VELASQUEZ,

Defendant – Appellant.

_____

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  James C. Dever III, District Judge.  (7:18-cr-00144-D-1)

_____

Argued:  September 16, 2022                                Decided:  October 25, 2022

_____

Before AGEE and HARRIS, Circuit Judges, and MOTZ, Senior Circuit Judge.

_____

Reversed, vacated in part, and remanded by published opinion. Judge Agee wrote the opinion in which Judge Harris and Senior Judge Motz joined.

_____

**ARGUED:**  Anne Margaret Hayes, Cary, North Carolina, for Appellant.  William Connor Winn, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  Kenneth A. Polite, Jr., Assistant Attorney General, Lisa H. Miller, Acting Deputy Assistant Attorney General, Criminal Division, Appellate Section, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; G. Norman Acker, III, Acting United States Attorney, David A. Bragdon, Assistant United States Attorney, Chief, Appellate Division, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

_____

AGEE, Circuit Judge:

Enil Ramon Montoya Velasquez appeals his convictions for two drug-related offenses, asserting that his jury trial on those charges did not occur within the timeframe established by the Speedy Trial Act. *See* 18 U.S.C. §§ 3161(c)(1), 3162(a)(2). He also challenges his sentence, arguing that the district court procedurally erred in calculating the drug weight attributable to him and by not orally announcing during sentencing the discretionary conditions of supervised release imposed upon him in the written judgment.

As explained below, we agree with Velasquez that the record does not show that the district court complied with the Act's procedural requirements for granting an ends-of-justice continuance for the period between July 22, 2019, and November 7, 2019. *See* 18 U.S.C. § 3161(h)(7). Because that 108-day period exceeds the Speedy Trial Act's 70-day timeframe within which his trial had to occur, we reverse the district court's order denying Velasquez' motion to dismiss these two counts and vacate those convictions. As we also explain, vacating the convictions requires vacating Velasquez' entire sentence, which in turn moots his two sentencing challenges. Accordingly, we remand to the district court for further proceedings consistent with this opinion.

I.

A.

We pause to first provide some background on the Speedy Trial Act, as that context helps to understand the posture in which Velazquez' appeal arises.

2

The Speedy Trial Act requires that a criminal defendant's trial "commence within seventy days from the filing date . . . of the . . . indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). If this 70-day period elapses and the defendant moves to dismiss the charges on Speedy Trial grounds before trial, then the charges "shall be dismissed." *Id.* § 3162(a)(2); *United States v. Mosteller*, 741 F.3d 503, 506 (4th Cir. 2014). While dismissal is mandatory, the district court retains discretion to dismiss the charges with or without prejudice. § 3162(a)(2); *Mosteller*, 741 F.3d at 506.

Congress recognized, however, in enacting the Speedy Trial Act "that criminal cases vary widely and that there are valid reasons for greater delay in particular cases." *Zedner v. United States*, 547 U.S. 489, 497 (2006). "To provide the necessary flexibility, the [Speedy Trial] Act includes a long and detailed list of periods of delay that are excluded in computing the time within which trial must start." *Id.* (citing § 3161(h)). Relevant here is § 3161(h)(7), usually called the "ends-of-justice" exclusion. Under this provision, if the district court finds "that the ends of justice served by the granting of [a] continuance outweigh the best interests of the public and the defendant in a speedy trial," it can exclude that period from the Speedy Trial computation. § 3161(h)(7)(A). This exception may be invoked "by any judge on his own motion" or by any of the parties. *Id.*

B.

A federal grand jury returned a five-count indictment against Velasquez on August 28, 2018, and his initial appearance occurred one month later. But Velasquez' arraignment was postponed seven times between October 2018 and July 2019. Five of those

3

postponements related to discovery issues and the need for defense counsel to consult Velasquez after addressing those issues. The final two were sought in May and June 2019 because Velasquez' counsel was having medical issues. Velasquez appeared for his arraignment on July 22, 2019, at which time he pleaded guilty to three counts (Counts Two, Three, and Five), and not guilty to two counts (Counts One and Four).

After concluding the arraignment, the district court asked the parties if they had "talked about trial dates." J.A. 96. The Government represented that it had spoken with Velasquez' counsel on this matter and asked the court if the parties could "reach out to [the case manager] after court today with a final time frame?" *Id.* at 96–97. The Government further informed the court that it was "looking like probably December is the earliest" time they could schedule trial. *Id.* at 97. The district court responded, "All right. December is filling up so I look forward to hearing from you on proposed dates." *Id.* The court then concluded the hearing, noting to Velasquez that he would "continue to have access to consult with [his attorney] as [Velasquez] prepare[d] for trial." *Id.* After the arraignment, the court entered a minute order with the following note: "counsel to contact the case manager regarding proposed trial dates. Trial to be set by order at a later date – speedy trial computation excluded by the court." *Id.* at 8. The court did not specify how long this continuance would last or a particular reason for the Speedy Trial delay. *See id.*

About two weeks later, on August 2, the case manager contacted the parties via email because she had not yet received proposed trial dates. Her email included periods of time that the presiding judge would be in trial and instructed the parties not to pick dates

4

within those time frames. The court's schedule reflected availability for a four-day trial in September, November, and December 2019, and in January 2020.

By October 7, the case manager still did not have specific trial date availability from Velasquez' counsel. She emailed Velasquez' counsel recounting the Government's and the court's availability, and requesting "3 specific dates" that worked as a trial date. Gov't Supp. J.A. 43 (emphasis omitted). The case manager only provided dates in January, February, and March 2020. Velasquez' counsel responded that she was available for trial "February 24–28, 2020 and any date in March 2020." *Id.* at 45.

About one month later, on November 7, 2019, the district court issued an order scheduling trial for February 25, 2020. The court found "that the ends of justice served by granting this extension outweigh the best interests of the public and the defendant in a speedy trial," and thus "excluded" "[t]he period of delay necessitated by this extension" under "18 U.S.C. § 3161(h)." J.A. 99. Three weeks before trial, however, Velasquez' counsel moved to withdraw based on a conflict of interest. The district court granted that motion and, as a result, continued trial to May 27, 2020.

Before trial, Velasquez, through his new counsel, moved to dismiss Counts One and Four under the Speedy Trial Act. He argued that two continuances granted by the district court were not properly excludable from the Speedy Trial computation: (1) the 108-day period between July 22, 2019, and November 7, 2019; and (2) the 110-day period between November 7, 2019, and February 25, 2020. He noted that either period was sufficient to mandate dismissal of Counts One and Four. *See* 18 U.S.C. §§ 3161(c)(1), 3162(a)(2).

5

The district court denied Velasquez' motion to dismiss on the record during a hearing on May 20, 2020. At first, it explained that it granted the Speedy Trial continuance on July 22, 2019, under the ends-of-justice exception "for trial preparation." J.A. 164–65. After this initial explanation, Velasquez' counsel reiterated his concerns with the July 22 continuance: "[i]t's not clear to me that there was any motion on behalf of the defendant directly or through counsel or the Government for that delay." *Id.* at 177. The district court responded: "[I]n order to provide defense counsel sufficient time to prepare for trial, the Court extended that time under the Act under 18 U.S.C., Section 3161, subparagraph (h)(7)(A)." *Id.* at 178. As for the November 7 continuance, the court remarked only that it "excluded the time under the Speedy Trial Act." *Id.* at 165.

Velasquez' case proceeded to trial, after which a jury found him guilty of both Counts One and Four. The district court sentenced him to 264 months' imprisonment on those two counts, and 240 concurrent months on Counts Two, Three, and Five.

Velasquez timely noted an appeal. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

II.

On appeal, Velasquez reasserts the same Speedy Trial challenges he made in the district court. "We review de novo the district court's interpretation of the Speedy Trial Act," *United States v. Rodriguez-Amaya*, 521 F.3d 437, 440 (4th Cir. 2008) (cleaned up), and "[w]hether the district court properly excluded" a given period under the Act, *United*

6

*States v. Jarrell*, 147 F.3d 315, 317 (4th Cir. 1998). We review the district court's factual findings for clear error. *Rodriguez-Amaya*, 521 F.3d at 440.

The Speedy Trial Act's ends-of-justice exception imposes upon district courts procedural and substantive requirements. Our analysis begins and ends with the relevant procedural requirements.

The Act requires the district court to "set[] forth, in the record of the case, either orally or in writing, its reasons for finding" that an ends-of-justice continuance is proper. § 3161(h)(7)(A). The Supreme Court has interpreted this provision to require that "the findings must be made, if only in the judge's mind, before granting the continuance." *Zedner*, 547 U.S. at 506; *see also United States v. Keith*, 42 F.3d 234, 237 (4th Cir. 1994) ("[T]he district court may not grant an ends of justice continuance *nunc pro tunc*.").

While it is "[t]he best practice . . . for a district court to put its findings on the record at or near the time when it grants the continuance," it need not do so. *Zedner*, 547 U.S. at 507 & n.7. Instead, "at the very least the Act implies that those findings must be put on the record by the time a district court rules on a defendant's motion to dismiss." *Id.* at 507. Even still, "it must be 'clear from the record that the court conducted the mandatory balancing contemporaneously with the granting of the continuance.'" *United States v. Henry*, 538 F.3d 300, 304 (4th Cir. 2008) (quoting *Keith*, 42 F.3d at 237). A district court's failure to comply with ends-of-justice exclusion's procedural requirements is per se harmful error. *Zedner*, 547 U.S. at 507–09. Thus, if a violation occurred, "the delay must be counted" in the defendant's Speedy Trial computation, *Henry*, 538 F.3d at 304.

Velasquez asserts that the district court procedurally erred in granting the July 22, 2019, continuance because the record does not show that the court contemporaneously balanced the ends-of-justice factors when it entered its minute order. The Government counters that no such error occurred and that, even if it did, Velasquez should be estopped from making this Speedy Trial challenge.

As explained below, we agree that the district court committed legal error by failing to show that it balanced the ends-of-justice factors contemporaneous with its July 22 minute order, and also find Velasquez is not estopped from pursuing that claim.[1]

A.

We begin with Velasquez' threshold claim that the district court procedurally erred in granting the July 22, 2019, ends-of-justice continuance. While he recognizes that the court explained at the motion-to-dismiss hearing that it granted the continuance so his attorney could have time to prepare for trial, Velasquez contends that the transcript from his July 22 arraignment does not reflect that his counsel needed more trial preparation time. He contends that, at most, the court showed only that it was concerned with its congested trial calendar—but that, he argues, is an impermissible ends-of-justice consideration.

The Government counters that we may infer from the record as a whole that the district court believed that Velasquez' counsel needed more trial preparation time when it entered the July 22 minute order. It points out that in the two months before the arraignment, Velasquez' counsel requested continuances under the ends-of-justice

---

[1] Given these holdings, we need not address Velasquez' separate contention that the district court's November 7 ends-of-justice continuance violated the Speedy Trial Act.

exclusion due to health issues she was experiencing. So when the Government jointly represented during the arraignment hearing that it was "looking like probably December is the earliest" time a trial could occur, J.A. 97, the Government posits that was the parties' unstated but implicit representation that Velasquez' counsel needed more time to prepare for trial. The Government argues that the district court showed it had that rationale on its mind when, at the end of the hearing, it told Velasquez that he would "continue to have access to consult with [his attorney] as [Velasquez] prepare[d] for trial." *Id.*

The Government's reading of the record is far too strained. While the need for effective trial preparation is substantively a valid reason for granting an ends-of-justice continuance, *see* 18 U.S.C. § 3161(h)(7)(B)(iv), the record does not show that on July 22 the district court believed either party needed more trial preparation time.

Our decision in *Henry* is on all fours with this case. There the district court granted an ends-of-justice continuance during a status conference without a contemporaneous explanation, but it later stated at the motion-to-dismiss hearing that it granted the continuance to give the parties additional trial preparation time. 538 F.3d at 304. We held that the district court procedurally erred in granting this continuance because the record from the earlier status conference showed that "neither the parties nor the court indicated that there was a need to delay the trial date to allow for effective preparation." *Id.* at 305. Instead, the discussion between the court and the parties showed that the court "was concerned with finding a date that would conveniently fit into the schedules of counsel for both sides and the court, not with evaluating the ends-of-justice factors." *Id.* Accordingly, we determined that the district court failed to "engage in the contemporaneous ends-of-

9

justice analysis required by *Zedner*" when it granted the continuance during the status conference. *Id.* at 306.

So too here. The district court only asked the parties if they had "talked about trial dates." J.A. 96. The Government's response—that it was "looking like probably December is the earliest," *id.* at 97—was vague and ambiguous as to why they were looking at that month. The Government offered, and the district court requested, no clarification as to whether December was "the earliest" point for trial because Velasquez or his counsel needed more time to prepare for trial, because that was the most convenient time for counsels' respective schedules, or for some other reason. *Id.* Similar to *Henry*, "[a]t no point during the [hearing] did the court mention a concern about giving the parties additional time to prepare for trial or mention other ends-of-justice factors." 538 F.3d at 306. In fact, neither the district court nor the parties ever mentioned the Speedy Trial Act or the ends-of-justice exclusion. We therefore cannot find, from the hearing transcript alone, that the district court had the ends-of-justice factors on its mind when it entered its July 22 minute order.

The district court had the opportunity to offer more clarity at the motion-to-dismiss hearing, but it gave none. The court stated in a conclusory manner that it granted the July 22 ends-of-justice continuance "to provide defense counsel sufficient time to prepare for trial." J.A. 178. But again, similar to *Henry*, the record does not support that the district court had that concern on its mind contemporaneous with its July 22 minute order because Velasquez' counsel never requested more time for trial preparation during that proceeding. *See* 538 F.3d at 305.

10

Nor can we, as the Government suggests, infer that Velasquez' counsel needed more trial preparation time solely from the fact that his counsel requested two prior ends-of-justice continuances in May and June 2019. The record shows that counsel requested those continuances to recover from a recent broken foot that precluded her from driving so that she would have time to confer with Velasquez *about his upcoming arraignment. See* J.A. 58 (May 2019 request) ("[D]efense counsel is requesting that this case be continued for thirty (30) days to allow her time to recover from her injury and meet with her client to prepare for arraignment."); *id.* at 63 (June 2019 request) (providing the same rationale). To accept the Government's argument would require us to simply speculate as to a *post hoc* justification for the district court's July 22 minute order. But the Speedy Trial Act expressly precludes us from doing so. *See Keith*, 42 F.3d at 237; *see also Zedner*, 547 U.S. at 507 ("[W]ithout on-the-record findings, there can be no [ends-of-justice] exclusion[.]").

For these reasons, we conclude that the district court committed legal error in failing to comply with the Speedy Trial Act's procedural requirements for granting an ends-of-justice continuance because it is not "clear from the record that the court conducted the mandatory balancing contemporaneously with the granting of the continuance." *Henry*, 508 F.3d at 304 (citation omitted).[2]

### B.

The Government contends that, even if the district court committed legal error, Velasquez should be estopped from raising such a challenge. It relies on our decision in

---

[2] We therefore need not and do not address Velasquez' alternative contention that the district court legally erred by granting an "open-ended" ends-of-justice continuance.

*Keith*, which held that if "the reasons underlying the district court's granting of the continuance, as agreed to by the defendant, set forth a sufficient factual basis which would support an ends of justice finding under the Act," then the defendant would be barred from challenging the reasons for that continuance on appeal. 42 F.3d at 240 (emphasis omitted). The Government asserts that since Velasquez' counsel consented to the Government's representations during the July 22 arraignment that December was "the earliest" time trial could be held, J.A. 97, *Keith* precludes his instant Speedy Trial claim. We disagree.

Preliminarily, the parties recognized during oral argument that there may be some tension between the estoppel rule we established in *Keith* and the Supreme Court's later application of the equitable doctrine of judicial estoppel in *Zedner*.[3] Unlike the single-factor test we established in *Keith*, in applying the equitable doctrine of judicial estoppel, *Zedner* looked to "several factors" to determine if estoppel is appropriate, including: (1) the inconsistency between the defendant's position before the district court and on appeal; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." 547 U.S. at 504 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750–71 (2001)); *see New Hampshire*, 532 U.S. at 751 (noting that these three factors are not "inflexible

---

[3] We note that, like us, our sister circuits have recognized that *Zedner*'s judicial estoppel formulation applies to Speedy Trial Act claims in subsequent cases. *See, e.g.*, *United States v. Pakala*, 568 F.3d 47, 59–60 (1st Cir. 2009); *United States v. Alvarez-Perez*, 629 F.3d 1053, 1062 (9th Cir. 2010).

12

prerequisites or an exhaustive formula" and "[a]dditional considerations may inform the doctrine's application in specific factual contexts").

*Keith*'s estoppel formulation is no longer binding where it is inconsistent with the estoppel test applied by the Supreme Court in *Zedner*. We see at least two material respects in which that inconsistency can arise. *See United States v. Banks*, 29 F.4th 168, 175 (4th Cir. 2022) (explaining that we are not bound by prior panel decisions that "subsequently prove[] untenable," and that a decision "is untenable if its reasoning or holding is inconsistent with a Supreme Court decision"). First, *Zedner* applied a judicial estoppel test that permits courts to consider a host of factors that may or may not be relevant depending on the context of a given case. By contrast, *Keith* set forth a single-factor, all-or-nothing test that does not allow for the same equitable considerations as *Zedner*'s formulation.

Second, one of the estoppel factors cited in *Zedner* conflicts with *Keith*'s single-factor estoppel test. *Zedner* held that a district court may consider in its estoppel analysis whether a defendant persuaded the district court to find that a given reason justified an ends-of-justice continuance. 547 U.S. at 504. Put another way, estoppel can apply under *Zedner* if the defendant tells the district court that an ends-of-justice continuance is warranted when in fact such a continuance would ordinarily be precluded. *Keith*'s prescribed analysis, however, is more limited and allows for estoppel to apply only if the reasons the defendant "agreed to" are sufficient to support an ends-of-justice continuance. *See* 42 F.3d at 240. So if the defendant represents to the district court that a continuance is warranted under the Act when it in fact is not, *Keith* may not permit us to find estoppel. Given these potential conflicts, we hold that in light of *Zedner*, *Keith*'s formulation of when

13

a defendant is estopped from raising a Speedy Trial Act challenge is no longer good law in all cases. *See Banks*, 29 F.4th at 175.

Applying *Zedner*, Velasquez is not estopped from raising his Speedy Trial challenge. To begin, the argument he presents now is not "clearly inconsistent" with the position he took during the arraignment. 547 U.S. at 505. As we have explained, there is no evidence that the parties envisioned that the district court would, after the arraignment's conclusion, consider granting an ends-of-justice continuance under the Speedy Trial Act. Velasquez could not have taken a position on a continuance for which he had no notice. *See id.* at 505–06 (holding that the defendant's representation that he needed more time to gather evidence was not "clearly inconsistent" with his later argument that the continuance was invalid under the Speedy Trial Act because "the discussion at the January 31 status conference," during which the continuance was granted, "did not focus on the requirements of the Act"); *Alvarez-Perez*, 629 F.3d at 1062 ("Alvarez never represented that the period from June 27 to July 18 was excludable, nor did he argue to the court that July 18 was the proper start date [for the Speedy Trial clock], so he is not now judicially estopped from taking a contrary position."); *United States v. Mathurin*, 690 F.3d 1236, 1243 (11th Cir. 2012) ("Before the indictment was filed, [defendant's] counsel simply asked the government for more time to consider a plea offer. That does not equal asking the government to exceed the time limits permitted by the Act, and so it is not 'clearly inconsistent' with . . . seeking dismissal of the indictment.").

Further, and for similar reasons, Velasquez did not "succeed[] in persuading [the district] court" to find that an ends-of-justice continuance was warranted on July 22.

14

*Zedner*, 547 U.S. at 504 (citation omitted). Again, the parties did not ask for a Speedy Trial continuance at the end of Velasquez' arraignment, let alone cite the Speedy Trial Act. The district court took it upon itself to grant an ends-of-justice continuance. So this factor also counsels against estoppel. *See id.* at 505 (holding that the defendant did not persuade the district court to hold that prospective waivers of Speedy Trial rights were valid because "it was the District Court that requested the waiver and produced the form for [him] to sign").

Lastly, there is a diminished risk here that Velasquez will "derive an unfair advantage" from enforcing his Speedy Trial Act rights. *Id.* at 504 (citation omitted). To be sure, his original counsel is not blameless as she took nearly three months to provide the district court's case manager with her trial availability. Nonetheless, as the Supreme Court has explained, enforcing the Speedy Trial Act's procedural requirements for ends-of-justice continuances "need not represent a windfall" to the defendant because the Act permits the district court to "dismiss the charges *without prejudice*." *Bloate v. United States*, 559 U.S. 196, 214–15 (2010). Indeed, the Act itself provides that in deciding whether to dismiss an indictment with or without prejudice, the court may consider "the facts and circumstances of the case which led to the dismissal." 18 U.S.C. § 3162(a)(2); *see Bloate*, 559 U.S. at 215 (concluding the same and citing this provision to observe that "a district court should consider, among other factors, the party responsible for the delay"). Accordingly, under these facts, the risk of a windfall benefit accruing to Velasquez through his Speedy Trial challenge is limited.

In sum, because none of the *Zedner* factors suggest that estoppel is appropriate here, we conclude that Velasquez' Speedy Trial Act claim may proceed.

15

\* \* \* \*

Velasquez has shown that the district court's July 22, 2019, continuance did not comply with the Speedy Trial Act's procedural requirements for granting ends-of-justice continuances. That error was per se harmful, so we cannot exclude the 108-day period between July 22, 2019, and November 7, 2019, from Velasquez' Speedy Trial computation. *See Zedner*, 547 U.S. at 507–09. Since more than 70 non-excludable days elapsed before Velasquez' trial occurred, the Speedy Trial Act requires that Counts One and Four be dismissed. 18 U.S.C. §§ 3161(c)(1), 3162(a)(2). "We leave it to the district court to determine in the first instance whether [that] dismissal should be with or without prejudice." *Henry*, 538 F.3d at 306.

III.

For the foregoing reasons, we reverse the district court's order denying Velasquez' motion to dismiss Counts One and Four for a violation of the Speedy Trial Act and vacate his convictions on those counts. As a result, we also vacate his entire sentence. *See United States v. Ventura*, 864 F.3d 301, 309 (4th Cir. 2017) (explaining that, under the "sentencing package doctrine," when some of a defendant's convictions are vacated "the sentence becomes void in its entirety").[4] The case is remanded for further proceedings consistent with this opinion.

*REVERSED, VACATED IN PART,*

---

[4] Our vacatur of Velasquez' sentence renders moot his separate challenges to his sentence, because on remand the district court will be "free to revisit any rulings it made (Continued)

16

*AND REMANDED*

---

at the initial sentencing." *Ventura*, 864 F.3d at 309 (citation omitted); *see also United States v. Smith*, 94 F.3d 122, 125 n.2 (4th Cir. 1996) (holding that the defendant's challenges to his sentence were mooted by the vacatur of some, but not all, of his convictions on appeal).