**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-4534

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

KENNETH WAYNE HART, a/k/a Wayne Hawkins, a/k/a Hawk, a/k/a Big Daddy, a/k/a Billy Reds, a/k/a Billy Red Hart,

Defendant – Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Peter J. Messitte, Senior District Judge. (8:17-cr-00376-PJM-1)

Argued: October 26, 2023                    Decided: January 25, 2024

Before KING, THACKER, and RICHARDSON, Circuit Judges.

Affirmed in part, reversed in part, vacated in part, and remanded by published opinion. Judge Richardson wrote the opinion, in which Judge King and Judge Thacker joined.

**ARGUED:** Charles Burnham, BURNHAM & GOROKHOV PLLC, Washington, D.C., for Appellant. Jason Daniel Medinger, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Jonathan Knowles, BURNHAM & GOROKHOV PLLC, Washington, D.C., for Appellant. Jonathan F. Lenzner, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

RICHARDSON, Circuit Judge:

Kenneth Hart appeals his convictions for drug dealing, sex trafficking, and witness tampering. He argues that the government violated the Speedy Trial Act as to his witness-tampering conviction by failing to indict him within thirty days of his arrest for that offense. He also challenges the introduction of certain evidence at trial. We agree with Hart that the government violated the Speedy Trial Act on the witness-tampering conviction. But we reject his evidentiary challenges. Accordingly, we vacate Hart's witness-tampering conviction (Count Five) and remand for resentencing on all remaining counts.

## I.     Background

Kenneth Hart once profited from the unfortunate intersection of drugs and sex trafficking. Along with an associate, he sold heroin and crack cocaine out of his condo and nearby locations. He also ran a prostitution ring involving several women. To keep his victims in line, Hart gave them drugs in exchange for their services. And when they resisted, he resorted to verbal abuse and physical violence. Eventually, the law caught on and served one of his associates with a federal grand jury subpoena. Hart found out and told her not to attend. When she didn't listen, he physically assaulted her and threatened to kill her son.

Hart soon reaped what he sowed. On April 26, 2017, he was federally charged with witness intimidation, in violation of 18 U.S.C. § 1512(a)(2)(A), (C), and he made his initial appearance on May 18, 2017. According to the Speedy Trial Act, the government had to indict Hart on or before June 17, 2017. *See* 18 U.S.C. § 3161(b). But rather than doing so, the government filed a consent motion stating the mutual interest of the parties "to delay

2

the filing of an Indictment and the holding of a preliminary hearing to discuss the possibility of a resolution of the matter in advance of future proceedings." J.A. 21–22. Hart agreed to this request, so the district court granted the motion on May 30, 2017, after finding no opposition and "good and sufficient cause." J.A. 23–24. Plea discussions ultimately proved unfruitful, however, and the government indicted Hart for witness tampering on July 17, 2017—sixty days after he entered federal custody.

In the months that followed, Hart consented to many more continuances, thereby pushing his trial date by over two years. During this time, the grand jury for the District of Maryland returned a second superseding indictment. The indictment added four new charges: conspiracy to distribute and possess with intent to distribute heroin, cocaine, and cocaine base, in violation of 21 U.S.C. § 846 (Count One); conspiracy to commit sex trafficking by force, fraud, and coercion, in violation of 18 U.S.C. § 1594(c) (Count Two); and two counts of sex trafficking by force, fraud, and coercion, both in violation of 18 U.S.C. § 1591(a), (b)(1) (Counts Three and Four). And it retained the prior witness-tampering charge (Count Five).

Hart eventually became concerned that the government violated his speedy-trial rights. So on June 26, 2019, he sent a letter about this to the district court. After considering the matter, the court issued an opinion on July 23, 2019, explaining why it granted the many continuances. Yet the court only discussed the continuances that pushed back the trial date; it did not address why it excused the delayed filing of the original witness-tampering indictment.

3

Hart subsequently filed a *pro se* motion to dismiss all charges on January 23, 2020. He asserted that the government violated his speedy-trial rights, including his right to be indicted within thirty days of his appearance. The district court later denied this motion at a hearing held on February 25, 2020. But rather than providing fresh reasons for the indictment delay, the court merely pointed to its July 23 opinion, even though that opinion did not address this particular delay.

Hart's trial finally started on March 3, 2020. Over the course of the proceedings, the government presented testimony from Hart's co-conspirator, one of his drug customers, and several of his victims, as well as physical evidence of his drug dealing. The trial lasted seven days, and at its close, the jury convicted Hart on all counts. The district court then sentenced Hart to 300 months in prison. This timely appeal followed.

## II.     Discussion

On appeal, Hart argues that the district court erred by (1) denying his motion to dismiss the indictment for violating the Speedy Trial Act and (2) admitting certain prejudicial evidence at trial. We find that the government failed to indict Hart for witness tampering within the Speedy Trial Act's thirty-day window. But we reject Hart's evidentiary challenges. So we vacate only Hart's witness-tampering conviction (Count Five) and remand for resentencing on the four counts added by the superseding indictment.

### A.     Speedy Trial Act

The Speedy Trial Act requires the government to indict a criminal defendant for an offense within thirty days of the date he was arrested for that offense. 18 U.S.C. § 3161(b). If the government fails to do so, then that charge must be dismissed. § 3162(a)(1). But the

Act also provides for the exclusion of certain delays from the speedy-trial clock. Some delays are automatically excluded, such as those "resulting from other proceedings . . . including but not limited to" a non-exhaustive list of examples.[1] § 3161(h)(1). Other delays are excluded if the district court finds that granting a continuance serves "the ends of justice" and sets forth its findings on the record. § 3161(h)(7).

---

[1] The list includes:

(A) delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant;

(B) delay resulting from trial with respect to other charges against the defendant;

(C) delay resulting from any interlocutory appeal;

(D) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;

(E) delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district under the Federal Rules of Criminal Procedure;

(F) delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable;

(G) delay resulting from consideration by the court of a proposed plea agreement to be entered into by the defendant and the attorney for the Government; and

(H) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

§ 3161(h)(1).

5

Hart entered federal custody for witness tampering (which eventually became Count Five in the superseding indictment) on May 18, 2017. Everyone agrees that the speedy-trial clock for that charge began at this moment. But Hart was not indicted for that offense until July 17, 2017—a full sixty days after his arrest. Without an applicable exclusion, this delay violated the Act. So Hart's case comes down to whether the delay following the district court's May 30 continuance—which extended the filing of the indictment to July 17—is excluded from the speedy-trial clock.

The government offers two reasons why this delay is excluded.[2]  First, the government argues that the delay is automatically excluded because the continuance was granted to allow for plea negotiations. Second, the government argues that the delay is excluded because it served the ends of justice. We address each claim in turn and find that neither provides safe harbor for the delay. So we reverse the district court and vacate Hart's conviction on Count Five for violating the Act.

### 1.    Plea negotiations are not automatically excluded as "other proceedings."

The government first argues that the delay is automatically excluded under § 3161(h)(1)'s broad "other proceedings" language. In two prior cases, we held that time spent engaging in plea negotiations is automatically excluded under (h)(1). *See United States v. Leftenant*, 341 F.3d 338, 344–45 (4th Cir. 2003); *United States v. Keita*, 742 F.3d

---

[2] The government also argues that we should ignore the merits of Hart's appeal because he filed a *pro se* motion to dismiss while represented by counsel. Response Br. at 11 (citing unpublished decisions). But the district court chose to dismiss Hart's motion on the merits. So we decline to dispose of his appeal on this basis.

184, 188 (4th Cir. 2014). And the parties clearly requested the May 30 continuance to negotiate a plea deal. So the government thinks Hart's is a slam-dunk case for an automatic exclusion.

But there's one problem. In *Bloate v. United States*, the Supreme Court explained the relationship between the general "other proceedings" language in (h)(1) and the more specific examples that follow this language. 559 U.S. 196 (2010). There, the government argued before the Court that time spent preparing pretrial motions is automatically excluded under (h)(1). *Id.* at 204. But the Court observed that this category of pretrial motions is already covered in subparagraph (h)(1)(D), which only excludes "delay[s] resulting from any pretrial motion, *from the filing of the motion* through the conclusion of the hearing on, or other prompt disposition of, such motion." *Id.* at 205 (emphasis added) (quoting § 3161(h)(1)(D)). And because a more specific provision limits a more general provision, the Court declined to exclude time spent preparing pretrial motions—which falls outside of (h)(1)(D)'s scope—under the more general language in (h)(1). *Id.* at 206. In so holding, the Court established the broader proposition that if one of (h)(1)'s enumerated exclusions already covers a "category of delay," the "limits" to that category within the relevant subparagraph are conclusive. *Id.* at 208. Accordingly, a delay of that kind cannot be excluded under (h)(1)'s more general "other proceedings" provision. *See id.* at 206.

*Bloate*'s reasoning has clear implications for Hart's case. The government wants us to find that a delay caused by plea negotiations is excluded under (h)(1)'s broad umbrella. But subparagraph (h)(1)(G) already covers delays involving plea agreements, and it only excludes them once the court begins to consider a proposed agreement. *See*

7

§ 3161(h)(1)(G) (excluding "delay resulting from *consideration by the court* of a proposed plea agreement to be entered into by the defendant and the attorney for the Government" (emphasis added)). So *Bloate* precludes us from automatically excluding delays that occur *before* the court considers the agreement, including time spent negotiating the agreement itself. Two other Circuits have already interpreted *Bloate* to require this result. *United States v. Mathurin*, 690 F.3d 1236, 1241 (11th Cir. 2012) (holding that (h)(1)(G) bars excluding plea negotiations under (h)(1) as "other proceedings"); *United States v. White*, 920 F.3d 1109, 1113 (6th Cir. 2019) (same).

Because *Leftenant* and *Keita* are out of step with *Bloate*, their holdings must be abandoned. "Where 'prior decisions' in our Circuit use 'reasoning inconsistent with Supreme Court authority,' 'we are not bound to follow them.'" *Rose v. PSA Airlines, Inc.*, 80 F.4th 488, 504 (4th Cir. 2023) (quoting *United States v. Banks*, 29 F.4th 168, 178 (4th Cir. 2022)). And although *Keita* was decided after *Bloate*, *Keita* did not consider the effect of *Bloate*, so it cannot bind us.[3] *Id.* Notwithstanding our prior holdings, therefore, time spent engaging in plea negotiations is not automatically excluded under the Act. The delay in filing Hart's indictment is not automatically excluded on this basis.

---

[3] Although we have never applied *Bloate* to plea negotiations, we had used the same reasoning as *Bloate* prior to the case and reached the same result with regard to pretrial motions. In *United States v. Jarrell*, we held that time spent preparing pretrial motions is not automatically excluded under (h)(1), given the limited scope of (h)(1)(F) (which, at that time, covered pretrial motions). 147 F.3d 315, 317 (4th Cir. 1998). In so holding, we recognized that "Congress' decision not to include pretrial preparation time within the scope of the delay excludable under § 3161(h)(1)(F) strongly indicates that it did not intend to exclude such time under § 3161(h)(1) at all." *Id.* So even though *Bloate* renders some of our precedents untenable, it is still consistent with another of our prior holdings.

## 2.    The district court did not make an ends-of-justice finding.

The government alternatively argues that the delay is excluded because it served the ends of justice. Under the Act, a court may exclude a period of delay if two things happen: (1) the "judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial"; and (2) "the court sets forth, in the record of the case, either orally or in writing, its reasons for [the] finding[s]." § 3161(h)(7)(A); *United States v. Smart*, No. 22-4209, slip op. at 7 (4th Cir. Jan. 24, 2024). In other words, it first must be "clear from the record that the court conducted the mandatory balancing contemporaneously with the granting of the continuance." *United States v. Keith*, 42 F.3d 234, 237 (4th Cir. 1994). And, second, the court must set forth the reasons for its finding no later than when it rules on a defendant's motion to dismiss. *United States v. Henry*, 538 F.3d 300, 303–04 (4th Cir. 2008). If the district court fails to meet these requirements, then the delay is not excluded from the speedy-trial clock.

The government argues that the ends of justice supported the district court's decision to grant the May 30 continuance. But there is no evidence on the record that the district court contemporaneously conducted ends-of-justice balancing or ever set forth the reasons for that finding. The May 30 order did not mention an ends-of-justice finding. *See Smart*, slip op. at 8. Neither did the consent motion. Instead, the order granted the continuance based on a lack of opposition and "good and sufficient cause." J.A. 24. But the court never explained—and the motion never made plain—what good and sufficient cause means, nor why it existed. So based on the order and motion, we cannot determine

9

whether the court contemporaneously conducted the ends-of-justice balancing.  *See Smart*,

slip op. at 8.  Nor did the court ever provide the reasons for making an ends-of-justice

finding for the delayed indictment.  *See id.* at 8–9.  While it explained why it excluded time

*after* the indictment (including general discussions about post-indictment delays based on

ongoing plea negotiations), it never explained why it excluded the time *before* filing the

indictment pursuant to an ends-of-justice inquiry.  And when the court later ruled on Hart's

motion to dismiss, it merely pointed back to its earlier discussion of post-indictment delays,

even though that response never addressed the delay in the indictment's filing.  Based on

this record, therefore, we conclude that the delay following the May 30 continuance is not

excluded under § 3161(h)(7).[4]

### 3. Because the filing of the indictment exceeded the speedy-trial clock as to Count Five, that count alone must be vacated.

The period of delay following the May 30 continuance is not excluded from the

speedy-trial clock.  This means that the government took sixty days to indict Hart for the

---

[4] The government cites *Jarell* for the idea that a district court need not say the "magic words" if the record "set[s] forth a sufficient factual basis which would support an ends of justice finding under the Act."  Response Br. at 15–16; 147 F.3d at 319.  Although the district court need not use any "magic words," our precedent from before—and Supreme Court precedent from after—*Jarell* unequivocally holds that a district court must itself make the finding and enter its reasons on the record, even if belatedly.  *See Keith*, 42 F.3d at 237; *Zedner v. United States*, 547 U.S. 486, 506–07 (2006).  Insofar as *Jarell* says otherwise, it cannot bind us.

10

witness-tampering charge—a clear violation of the Act's thirty-day window.  So the only remaining question is what we should do about this violation.[5]

The Act supplies a clear answer:  If a complaint charges an individual for an offense but fails to indict him within thirty days of his arrest, the *charged offense* must be dismissed.  *See* § 3162(a)(1).[6]  So because the government first charged Hart with witness tampering (eventually Count Five) but failed to timely indict him for that offense, the district court should have dismissed that count.  Yet the Act does not require the dismissal of charges that were not included in the original complaint.  This follows from the statute's plain text and is the consensus view among other Circuits.  *See United States v. Oliver*, 238 F.3d 471, 473 (3d Cir. 2001) (collecting cases).  Accordingly, the four charges that later appeared in the second superseding indictment—Counts One through Four—are safe, because they were never subject to the pre-indictment speedy-trial clock in the first place.

Hart still thinks that the proper remedy is a new trial on all counts.  He argues that the district court's failure to dismiss his complaint unfairly prejudiced his other convictions by allowing the introduction of irrelevant and highly prejudicial testimony.  At trial, the government offered testimony from Crystal Smith, who claimed that Hart physically

---

[5] Although there is a colorable claim that estoppel should bar Hart from objecting to this delay on appeal, *see United States v. Velasquez*, 52 F.4th 133, 141 (4th Cir. 2022), the government failed to properly raise this issue and thereby forfeited it, *see Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012).

[6] "If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit . . . , *such charge* against that individual contained in such complaint shall be dismissed or otherwise dropped."  § 3162(a)(1) (emphasis added).

11

assaulted her and threatened to kill her son after she was served with a federal grand jury subpoena. Hart argues that these accusations were relevant to Count Five but were not relevant to any other count. And given the violent content of Smith's testimony, he thinks her words unduly prejudiced the jury against him on the remaining counts. To Hart, only a new trial can remedy this error.

Although not stated in these terms, Hart essentially advances a "prejudicial spillover" challenge. A prejudicial spillover challenge asks us to "determine whether evidence admitted to support a reversed count prejudiced the remaining counts to warrant their reversal." *United States v. Hornsby*, 666 F.3d 296, 311 (4th Cir. 2012); *see also United States v. Rooney*, 37 F.3d 847, 855 (2d Cir. 1994). To prevail under this theory, a defendant must show that the challenged evidence would have been inadmissible at trial without the vacated count and prejudiced his convictions on the remaining counts. *See Hornsby*, 666 F.3d at 311–21; *United States v. Barringer*, 25 F.4th 239, 247–48 (4th Cir. 2022). If Hart makes this showing, then we must order a new trial on all remaining counts free of the evidentiary taint.

Yet Hart cannot make this showing. Hart claims that Smith's testimony would have been inadmissible at trial on the remaining counts. But we have repeatedly held that evidence of witness intimidation is admissible under Rule 404(b) to prove consciousness of guilt and criminal intent. *See United States v. Hayden*, 85 F.3d 153, 159 (4th Cir. 1996) ("Evidence of witness intimidation is admissible to prove consciousness of guilt and criminal intent under Rule 404(b), if the evidence (1) is related to the offense charged and (2) is reliable."); *United States v. Young*, 248 F.3d 260, 272 (4th Cir. 2001). Hart assaulted

12

Smith to keep her from testifying before a grand jury and offering law enforcement information about his controlled-substances distribution (which became Count One). So Smith's witness-intimidation testimony would have been admissible at trial for this charge to prove his guilt and criminal intent. There was thus no prejudicial spillover at Hart's trial.

Before moving on to other matters, let's retrace our steps. The government charged Hart by complaint with witness tampering—the offense found in the second superseding indictment's Count Five—but failed to indict him within thirty days of his arrest. This delay does not qualify for an exclusion under the Speedy Trial Act. So Count Five, but only that count, should have been dismissed. And because of this, we vacate Hart's conviction on this count. "We leave it to the district court to determine in the first instance whether [that] dismissal should be with or without prejudice." *Velasquez*, 52 F.4th at 142 (quoting *Henry*, 538 F.3d at 306).

## B.    Evidentiary Challenges

Besides his speedy-trial challenge, Hart contests the introduction of certain evidence at trial. We address each issue in turn and find that the district court committed no error.

### 1.  Shipley's testimony about Hart's physical violence

First, Hart contends that the district court erred by permitting certain testimony from Anna Shipley, his co-conspirator and former co-defendant. *See* Fed. R. Evid. 403. At trial, Shipley testified that Hart hit her on at least two occasions: one time because he thought she stole from him, and another because she made a comment that annoyed him. Hart argues that this testimony was not relevant to any of the charged offenses, since the alleged

13

conduct was unrelated to his sex-trafficking charges.[7]   And he thinks this testimony was highly prejudicial because it portrayed him as a domestic abuser before the jury.

We review a district court's decision to admit evidence for abuse of discretion. *United States v. Benson*, 957 F.3d 218, 228 (4th Cir. 2020).  "Evidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401. We have often observed that "relevance typically presents a low bar to admissibility." *Leftenant*, 341 F.3d at 346.  "Indeed, to be admissible, evidence need only be 'worth consideration by the jury,' or have a 'plus value.'"  *Id.* (quoting *United States v. Queen*, 132 F.3d 991, 998 (4th Cir. 1997)).  Irrelevant evidence is inadmissible.  Fed. R. Evid. 402.

The district court did not abuse its discretion by permitting Shipley's testimony. Hart was charged, among other things, with conspiring to use and using force, threats of force, and coercion to control the victims of his sex trade.  His use of force against Shipley was relevant to these charges because it helped explain how he controlled others.  It also increased the likelihood that Hart used force against his victims, since Shipley's testimony demonstrated his willingness to commit assault at the slightest provocation.  And, as the district court found, his actions were emblematic of the "atmosphere of violence" that kept

---

[7] Although Hart raised a Rule 404(b) objection in the district court, he raises no such objection on appeal.  This argument is therefore forfeited.  *See Mayfield*, 674 F.3d at 377.

his victims in line.[8]   J.A. 286.   So Shipley's testimony was relevant to the underlying charges against Hart.

Hart also argues that even if Shipley's testimony was relevant, the district court abused its discretion by not excluding it under Rule 403.  A district court "may exclude relevant evidence if its probative value is *substantially outweighed* by the danger of . . . unfair prejudice."  Fed. R. Evid. 403 (emphasis added).  "[U]nfair prejudice speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."  *United Staes v. Tillmon*, 954 F.3d 628, 643 (4th Cir. 2019) (quoting *United States v. Basham*, 561 F.3d 302, 327 (4th Cir. 2019)).  In other words, evidence is inadmissible "when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and . . . this risk is disproportionate to the probative value of the offered evidence."  *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 124 (4th Cir. 2011) (quoting *United States v. Hammoud*, 381 F.3d 316, 341 (4th Cir. 2004)).  "We will not overturn a Rule 403 decision except under the most extraordinary of circumstances, where a trial court's discretion has been plainly abused."  *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 349–50 (4th Cir. 2014) (cleaned up).

---

[8] Hart observes that his victims never testified to having witnessed these particular assaults.  But he concedes that at least one other person did see them happen.  *See* Opening Br. at 18.  And his victims seem to have known and interacted with Shipley.  *See, e.g.*, J.A. 289–92 (Shipley describing being locked in a room with a victim).  So the jury was entitled to infer that Hart's victims knew how he treated Shipley, even if his victims didn't explicitly say so at trial.

15

Hart first contends that we must reverse the district court because it never mentioned Rule 403.  But "[a]s long as the record as a whole indicates appropriate judicial weighing, we will not reverse for a failure to recite mechanically the appropriate balancing test." *United States v. Lewis*, 780 F.2d 1140, 1142 (4th Cir. 1986); *see also United States v. Blevins*, 960 F.2d 1252, 1256 (4th Cir. 1992) ("An appellate court . . . may affirm a judgment where the record reveals that the . . . statements were plainly admissible, whether or not a detailed rationale for admitting the statements has been stated by the trial court."). So as long as the record supports the district court's decision to admit Shipley's testimony, we will not reverse it for failure to mechanically cite the Rule 403 balancing inquiry.

The record provides adequate support for the district court's decision to permit Shipley's testimony.  As explained above, Hart's violent treatment of Shipley was relevant to the underlying sex-trafficking charges.  And any risk of prejudice was likely minimal. Over the course of the trial, several witnesses (including several of Hart's victims) testified to Hart's use of physical violence against them, often in great detail.  Given this mountain of inflammatory (yet admissible) evidence, it is unlikely that momentary references to other assaults unduly prejudiced the jury.[9]  Hence, any prejudice caused by Shipley's testimony was minimal and did not substantially outweigh its probative value.

---

[9] This distinguishes Hart's case from *United States v. Hands*, where the Eleventh Circuit excluded similar evidence of domestic abuse.  184 F.3d 1322 (11th Cir. 1999).  In *Hands*, the defendant was only on trial for drug charges, so evidence of his domestic abuse inevitably distracted from the relevant issues.  *Id.* at 1325, 1328.  Here, by contrast, Hart's use of force and threats of force were a central element of the charges brought against him.

16

### 2. Shipley's appearance in prison garb

Hart next argues that the district court erred by permitting Shipley, his former co-defendant, to testify at trial wearing prison garb. Shipley testified that she pleaded guilty to conspiring with Hart and was incarcerated while awaiting sentencing. The district court expressed its displeasure at Shipley's prison attire. *See, e.g.*, J.A. 167 ("She should have been brought here not in prison garb. . . . She shouldn't appear this way."). But the district court later noted: "I don't think that's a problem. I think everybody understands where she is right now." J.A. 265. And Hart raised no objection to Shipley's attire at trial. So we must review this claim raised for the first time on appeal for plain error. *See* Fed. R. Crim. P. 52(b).[10]

Hart cannot clear this high bar to relief. In *Estelle v. Williams*, the Supreme Court held that due process prohibits courts from compelling a *defendant* to appear at trial in prison clothing. 425 U.S. 501, 504–05 (1976). But the Court has never applied this principle to a testifying co-defendant who pleaded guilty. *Cf. United States v. Adams*, 1 F.3d 1566, 1584 (11th Cir. 1993). Nor have we. *See United States v. Partman*, 568 F. App'x 205, 209 (4th Cir. 2014). And for good reason. *Estelle* turned on the potential effect an accused's prison attire can have on the basic presumption of innocence that must be

---

[10] Under plain-error review, Hart must prove "(1) an error, (2) that is plain, and (3) that affects substantial rights, 'which generally means that there must be a reasonable probability that, but for the error, the outcome of the proceeding would have been different.'" *United States v. Caldwell*, 7 F.4th 191, 211 (4th Cir. 2021) (quoting *Greer v. United States*, 141 S. Ct. 2090, 2096 (2021)). And then we may correct the error only if it seriously affects "the fairness, integrity, or public reputation of judicial proceedings." *Greer*, 141 S. Ct. at 2096–97.

17

afforded to him. *See* 425 U.S. at 504–05. But there is no presumption of innocence applied to Shipley. She was no longer merely an accused, having pleaded guilty. And here, Shipley properly testified that she pleaded guilty and was incarcerated. Her attire added nothing: "No prejudice can result from seeing that which is already known." *See id*. at 507 (quoting *United States ex rel. Stahl v. Henderson*, 472 F.2d 556, 557 (5th Cir. 1973)).

We therefore discern no plain error in the district court's choice to allow Shipley to wear prison garb while testifying.

### 3. Shipley's testimony about Hart's criminal history

Finally, Hart argues that the district court erred by denying his motion for a mistrial after Shipley referenced a time when Hart had just gotten out of jail. Evidence of a defendant's criminal convictions is generally inadmissible at trial.[11] *See United States v. Johnson*, 610 F.2d 194, 196 (4th Cir. 1979); Fed. R. Evid. 404(b)(1). Near the beginning of her testimony, the government asked Shipley how she learned Hart's real name. She responded that "he asked [her] to look up a case for him on the website." J.A. 176. The government then asked her about the circumstances of their first meeting. She responded that "[a] friend of [hers] said he had just got out of jail." J.A. 177. The government immediately interrupted her before she could say anything more. Hart proceeded to move for a mistrial, but the district court denied this request and directed Shipley to clarify her answer without mentioning Hart's criminal history. And during its final jury instructions,

---

[11] There are, of course, many exceptions to this rule. *See* Fed. R. Evid. 404(b)(2), 609. But the government does not argue that Shipley's testimony falls into one of these exceptions. So we proceed on the assumption that her testimony was inadmissible.

18

the court instructed the jury to consider only the charges for which Hart was indicted. Hart argues that by denying his motion for a mistrial, the district court prejudiced his defense by improperly permitting something about his criminal history to be inferred from his incarceration.

We need not delve into the merits of Hart's claim, for the denial of a motion for a mistrial will not be overturned absent a clear showing of abuse of discretion. *United States v. Dorsey*, 45 F.3d 809, 817 (4th Cir. 1995). This requires a showing of prejudice, but "no prejudice exists . . . 'if the jury could make individual guilt determinations by following the court's cautionary instructions.'" *Id.* (quoting *United States v. West*, 877 F.2d 281, 287–88 (4th Cir. 1989)). "Whether prejudicial error has been committed must be determined on the basis of the record in its entirety[,] and the result will generally turn on the facts of each case." *United States v. Johnson*, 610 F.2d 194, 196 (4th Cir. 1979).

We conclude that Shipley's indirect references to Hart's criminal background by referencing when Hart got out of jail did not prejudice the jury's verdict. First, Shipley's statements were brief and quickly interrupted by the government—no reference to Hart's jail time or other charges was ever again made during the trial. *See United States v. Vogt*, 910 F.2d 1184, 1193 (4th Cir. 1990). Second, there is no evidence that the government purposefully elicited these statements. *See Dorsey*, 45 F.3d at 817; *Johnson*, 610 F.2d at 197. To the contrary, the government immediately interrupted Shipley, explained that it had repeatedly instructed her not to mention these events, and attributed the mistake to her

19

nerves.[12]  Third, the government introduced overwhelming evidence of Hart's guilt at trial, including many witnesses and various pieces of physical evidence.  So Shipley's momentary slip-up was harmless.  *See Dorsey*, 45 F.3d at 817.  Finally, the district court later instructed the jury not to consider Hart's past actions unrelated to the charges at issue.  *See id.* at 818.  We follow a strong presumption that jurors follow the courts instructions, and "we can only reverse if there is some specific reason to doubt that the jury adhered to the district court's limiting instruction."  *Benson*, 957 F.3d at 230.  Hart offers "no reason to conclude the jury disregarded [it]."  *Id.*  For these reasons, Shipley's statements did not prejudice the outcome of Hart's case.

Hart stresses that the district court did not immediately give curative instructions.  But "if [Hart] wanted an immediate curative instruction, he should have asked the court for one."  *Wallace*, 515 F.3d at 331.  Plus, the court had Shipley clarify her answer without referencing Hart's criminal history, which was likely an attempt to remedy the error without drawing too much attention to what Shipley said.  *Cf. Dorsey*, 45 F.3d at 818

---

[12] Hart cites *United States v. Sands*, which reversed a conviction partly because the government introduced impermissible testimony through conduct "border[ing] on negligence."  899 F.2d 912, 915 (10th Cir. 1990).  But we have never said that mere negligence is enough to prove prosecutorial misconduct in this context.  *Cf. Dorsey*, 45 F.3d at 817 (explaining that because the government did not purposely introduce the inadmissible evidence, it "did not amount to governmental misconduct of the type that warrants mistrial"); *see also United States v. Wallace*, 515 F.3d 327, 331 (4th Cir. 2008).  Plus, the facts of *Sands* are distinguishable from those of this case.  In *Sands*, several witnesses referenced the defendant's criminal history, and, when asked by the court, the government couldn't explain how it had attempted to prevent this from happening.  899 F.2d at 914.  In Hart's case, by contrast, the government quickly interrupted Shipley and explained that it had warned her not to reference Hart's criminal history several times.  We therefore think it clear that no misconduct occurred.

("[T]he district court's curative instructions properly informed the jury of the types of evidence that they should and should not consider in reaching its verdict, without unduly emphasizing the existence of any criminal history record."). In any event, the lack of an immediate curative instruction does not outweigh the other factors mentioned above, including the curative instruction given at the end of trial. We therefore affirm the district court's denial of Hart's motion for a mistrial.

*          *          *

In sum, we affirm the district court's rulings on Hart's various evidentiary challenges. But we reverse the court's denial of Hart's motion to dismiss Count Five and vacate his conviction on that count. We also vacate his sentence and remand for resentencing on all remaining counts. *See Velasquez*, 52 F.4th at 143.

*AFFIRMED IN PART,*
*REVERSED IN PART,*
*VACATED IN PART,*
*AND REMANDED*